# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

HEGADORN v DEPARTMENT OF HUMAN SERVICES DIRECTOR
TRIM v DEPARTMENT OF HUMAN SERVICES DIRECTOR
TINDLE v DEPARTMENT OF HEALTH AND HUMAN SERVICES

Docket Nos. 156132, 156133, and 156134. Argued October 9, 2018 (Calendar No. 3). Decided May 9, 2019.

Plaintiffs Mary A. Hegadorn (Docket No. 156132), Dorothy Lollar (Docket No. 156133), and Roselyn Ford (Docket No. 156134) were elderly women receiving long-term care in nursing homes. In each case, the plaintiff, an "institutionalized spouse," began receiving long-term care at a nursing home at her own expense. After their institutionalization, each plaintiff's husband, a "community spouse," created an irrevocable trust that was solely for his own benefit (an SBO trust). The couples then transferred a majority of their individual and marital property to each SBO trust or its trustee, giving up any claim of title to that property. A short time after each SBO trust was formed, each institutionalized spouse applied for Medicaid benefits. The Department of Health and Human Services and its director (collectively, the department) determined that the entire value of the principal of each SBO trust was a countable asset for the purpose of determining each institutionalized spouse's eligibility for Medicaid benefits and denied their applications because the value of the trust assets put their countable resources above the $2,000 threshold. Plaintiffs contested the department's determinations regarding their respective applications, and in each case, an administrative law judge (ALJ) affirmed the department's determination. Hegadorn and Lollar separately appealed the ALJ decisions in the Livingston Circuit Court, and Ford appealed in the Washtenaw Circuit Court. With respect to Hegadorn and Lollar, the court, Michael P. Hatty, J., reversed the ALJ's decisions, as did the court, Timothy P. Connors, J., with respect to Ford. Plaintiffs all died during the appeals process, and their personal representatives—Ralph D. Hegadorn, Deborah D. Trim, and Denise Tindle—have been substituted as parties for Hegadorn, Lollar, and Ford, respectively. The Court of Appeals granted the department's applications for leave to appeal in each case, and the Court ordered the cases consolidated. In a published per curiam opinion, the Court of Appeals, M. J. KELLY, P.J., and STEPHENS and O'BRIEN, JJ., reversed, holding that assets placed by an institutionalized individual's spouse into an SBO trust are countable assets for determining whether an individual is eligible for Medicaid benefits. 320 Mich App 549 (2017). The Supreme Court granted plaintiffs' application for leave to appeal. 501 Mich 984 (2018).

In a unanimous opinion by Justice BERNSTEIN, the Supreme Court *held*:

Marital assets placed in an irrevocable trust for the sole benefit of a community spouse are not automatically considered countable assets for the purpose of an institutionalized spouse's initial eligibility determination for Medicaid long-term-care benefits. Rather, such assets become countable only if circumstances exist under which the trust could make a payment to or for the benefit of the institutionalized spouse. Accordingly, the Court of Appeals judgment and the ALJ's final hearing decisions in each case were vacated.

1. The department administers Michigan's Medicaid program in accordance with policies contained in several publications, including the *Bridges Eligibility Manual*, the Social Security Administration's *Program Operations Manual System*, and the *State Medicaid Manual*. A person who falls in the optional medically needy category, like each plaintiff here, cannot qualify for Medicaid benefits if his or her countable assets and income exceed $2,000 during the period in which he or she applies for benefits. The extent to which the principal of a trust is a countable asset depends on the terms of the trust and whether any of the principal consists of countable assets or countable income. With respect to irrevocable trusts, the department must count as the person's countable asset the value of the countable assets in the trust principal if there is any condition under which the principal could be paid to or on behalf of the person from an irrevocable trust. Additional rules applicable only to institutionalized spouses are described in the Medicare Catastrophic Coverage Act (MCCA), codified at 42 USC 1396r-5.

2. When determining an institutionalized spouse's eligibility for Medicaid benefits, a computation of the couple's total joint resources is taken as of the beginning of the first continuous period of institutionalization in order to determine the amount of the "spousal share" allocated to the community spouse. The couple's resources are divided into those that are countable and those that are exempt. One-half of the total value of their countable resources "to the extent either the institutionalized spouse or the community spouse has an ownership interest" is considered a spousal share. The spousal share allocated to the community spouse qualifies as the community spouse resource allowance (CSRA), which is the monetary value of assets that may be retained by or transferred to the community spouse without those resources being counted against the institutionalized spouse for his or her initial eligibility determination. Once the amount of the CSRA is determined, a second calculation is required to determine the resources available to the institutionalized spouse for the purpose of determining the institutionalized spouse's initial Medicaid eligibility. This calculation is based on the resources available to the institutionalized spouse on the day that the institutionalized spouse submits his or her application for Medicaid benefits. In determining the resources of an institutionalized spouse at the time of application for benefits, 42 USC 1396r-5(c) provides that all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse to the extent that they exceed the CSRA. After the month in which an institutionalized spouse is determined to be eligible for benefits, no resources of the community spouse shall be deemed available to the institutionalized spouse. While the MCCA contains provisions governing the treatment of income paid from a trust, its general resource allocation provisions are silent with regard to the treatment of assets or resources held by a trust. The MCCA also does not provide a definition for the term "resources," but the term does not include those things excluded by 42 USC 1382b(a) or (d). Assuming without deciding that the principal of an irrevocable trust constitutes a resource as that term is used in 42 USC 1396r-5, such a resource is not "held by" the institutionalized or community spouse. The property that makes up the principal of a trust is not

owned by or otherwise directly available to the beneficiary. Instead, the trustee holds title to the property that constitutes the principal of a trust and holds it in trust for the beneficiary. The trust beneficiary, on the other hand, holds a right to enforce the performance of the trust in equity. Unless the beneficiary is also a trustee, the beneficiary does not own the property forming the principal of the irrevocable trust.

3. The first two paragraphs of the Medicaid trust rules contained in 42 USC 1396p(d) describe to whom the rules apply and how to determine whether that person created a trust. Under 42 USC 1396p(d)(1), for purposes of determining an individual's eligibility for, or amount of, benefits under a state plan, subject to 42 USC 1396p(d)(4), the rules specified in 42 USC 1396p(d)(3) apply to a trust established by such individual. Because Medicaid benefits are granted only to those who apply for them and who also meet the eligibility requirements, if an eligibility determination is being made, then the "individual" referred to in 42 USC 1396p(d)(1) must be a person applying for Medicaid benefits or a person who has been approved for a yet-to-be-determined amount of benefits. Applied to the context of this appeal, the individual referred to is the institutionalized spouse, who is the Medicaid applicant. The plain language of 42 USC 1396p(d)(1) thus provides that, to determine an institutionalized spouse's eligibility for Medicaid benefits, the rules outlined in 42 USC 1396p(d)(3) govern trusts established by the institutionalized spouse. Under 42 USC 1396p(d)(2), an individual has established a trust if assets of the individual were used to form all or part of the corpus of the trust and if any of the following individuals established such trust other than by will: the individual, the individual's spouse, a person with legal authority to act in place of or on behalf of the individual or the individual's spouse, or a person acting at the direction or upon the request of the individual or the individual's spouse. Therefore, when a community spouse creates a trust, other than by will, using assets of his or her institutionalized spouse, that action is legally attributed to the institutionalized spouse for the purposes of the institutionalized spouse's Medicaid eligibility determination.

4. To determine whether assets held by an irrevocable trust are available to the applicant and thus countable for his or her initial eligibility determination, the "any-circumstances rule" set forth in 42 USC 1396p(d)(3)(B) applies. This rule states in part that if there are any circumstances under which payment from the trust could be made to or for the benefit of the individual, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual. Correctly applying the any-circumstances rule requires understanding to whom "the individual" refers. The use of the definite article "the" preceding "individual" suggests that the term refers to a single person, as opposed to an open class of all people. Additionally, 42 USC 1396p(d)(1) uses "an individual" to refer to a person applying for Medicaid benefits or a person who qualifies for an amount of benefits that is yet to be determined. This provision then states that 42 USC 1396p(d)(3) applies to a trust established by that applicant or recipient. Thus, while "an individual" in 42 USC 1396p(d)(1) can be read as referring to a potential class of persons, when "such individual" establishes a trust, that class is reduced to a single person for the purposes of 42 USC 1396p(d)(3). 42 USC 1396p(d)(2) also refers to "an individual," and it contrasts that term with "the individual's spouse." Reading these provisions together, it follows that when Paragraph (3) refers to "the individual," it is referring to the same individual whose eligibility for, or amount of, benefits is being determined and who has established a trust under Paragraph (2): the applicant for or recipient of Medicaid benefits. When considering the eligibility of an institutionalized spouse for Medicaid

benefits, "the individual" must be read as referring to the institutionalized spouse to the exclusion of the community spouse, who, by definition, is not applying for or receiving Medicaid benefits. Because the *Bridges Eligibility Manual* incorporates the any-circumstances rule into Michigan's Medicaid policies, this same restriction applies, despite the manual's use of the term "person" in place of "individual." The any-circumstances rule, therefore, makes assets held by an irrevocable trust available to an institutionalized spouse if there are any circumstances, whether likely or hypothetical, under which the trust could make a payment to or for the benefit of the institutionalized spouse. If an irrevocable trust can make payments only to the community spouse, then those payments will satisfy the any-circumstances rule only if there is evidence that the payments could be for the benefit of the institutionalized spouse. If application of 42 USC 1396p(d)(3)(B) makes assets held by an irrevocable trust available to an institutionalized spouse, then the value of such assets is countable for the purposes of 42 USC 1396r-5(c).

5. The language of the trust documents themselves determines whether the SBO trusts at issue allow for a payment to be made "to or for the benefit of" the institutionalized spouses. The SBO trusts at issue are irrevocable trusts, meaning the principal of each trust is not automatically rendered available to the institutionalized spouse under 42 USC 1396p(d)(3)(A) and (B). Furthermore, the property and income that make up the principal of the SBO trusts at issue are not held by the institutionalized spouses or the community spouses. Rather, title to the property that is now the principal of each trust was transferred to the trust or trustee, and the money that forms part of the principal was moved into bank accounts controlled by the trustee. There was no suggestion that the community spouses retained possession of the tangible property that forms the principals of the trusts. Therefore, the principals of the SBO trusts are not automatically considered resources available to any of the spouses under 42 USC 1396r-5(c). Accordingly, the principal of each SBO trust can be considered a resource available to the institutionalized spouse, and thus a countable asset, only if made so by operation of the any-circumstances rule in 42 USC 1396p(d)(3)(B). Each of the SBO trusts at issue instructs the trustee to deplete the entirety of the principal during the community spouse's lifetime. Because the community spouses are not themselves applying for or receiving Medicaid benefits, they are not "the individual" referred to in 42 USC 1396p(d)(3)(B). Thus, the Court of Appeals erred by holding that the possibility of a distribution from each SBO trust to each community spouse automatically made the assets held by each SBO trust countable assets for the purposes of the respective institutionalized spouses' initial eligibility determination. Accordingly, the Court of Appeals judgment was reversed, the final administrative hearing decision in each case was vacated, and each case was remanded to the appropriate administrative tribunal for the proper application of the any-circumstances test. If the ALJs determine that circumstances exist under which payments from the trusts could be made to or for the benefit of the institutionalized spouse, then the ALJs should explain this rationale and affirm the department's decision. However, if no such circumstances exist, the ALJs should reverse the department's decisions and order that the Medicaid applications be approved.

Court of Appeals judgment reversed; tribunal decisions vacated; cases remanded to the appropriate tribunals for further proceedings.

Chief Justice MCCORMACK, concurring, agreed that property held in these SBO trusts was not countable toward Medicaid's resource limit because "the individual" in 42 USC 1396p(d)(3)(B) refers to the Medicaid applicant. She wrote separately to explain that, although

the issue was not presented in these cases, she believed the plaintiffs' transfer of assets into the trusts triggered Medicaid's divestment rules, thus undermining plaintiffs' overall planning strategy by disqualifying them from receiving benefits despite having satisfied Medicaid's threshold resource test. She stated that the majority opinion should not be interpreted as permitting a married Medicaid applicant to shelter and preserve any amount of wealth without restriction and then immediately receive financial assistance as if the applicant did not have that amount.

Justice CAVANAGH did not participate in the disposition of this case because the Court considered it before she assumed office.

©2019 State of Michigan

# OPINION

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED May 9, 2019

STATE OF MICHIGAN

SUPREME COURT

RALPH D. HEGADORN, Personal
Representative of the Estate of MARY
HEGADORN,

Plaintiff-Appellant,

v                                                    No. 156132

DEPARTMENT OF HUMAN SERVICES
DIRECTOR,

Defendant-Appellee.

DEBORAH D. TRIM, Personal
Representative of the Estate of DOROTHY
LOLLAR,
Plaintiff-Appellant,

v                                                    No. 156133

DEPARTMENT OF HUMAN SERVICES
DIRECTOR,
Defendant-Appellee.

DENISE TINDLE, Personal Representative
of the ESTATE OF ROSELYN FORD,
        Plaintiff-Appellant,

v                                                           No. 156134

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,
        Defendant-Appellee.

---

BEFORE THE ENTIRE BENCH (except CAVANAGH, J.)

BERNSTEIN, J.

In these consolidated cases, the individual plaintiffs[1] were elderly women receiving

long-term care in nursing homes. In each case, the plaintiff, an "institutionalized spouse,"[2]

began receiving long-term care at a nursing home at her own expense. One to two months

later, each plaintiff's husband, a "community spouse,"[3] created an irrevocable trust that

was solely for his own benefit. Such a trust is commonly called a "solely for the benefit

of," or "SBO," trust.[4] The couples then transferred a majority of their individual and

---

[1] The original plaintiffs, Mary Hegadorn, Dorothy Lollar, and Roselyn Ford, are now deceased, and the personal representatives of their respective estates have continued this action on their behalf. For ease of reference, this opinion will use "plaintiffs" to refer collectively to the original plaintiffs who initiated these proceedings.

[2] An "institutionalized spouse" is a person who is in a "medical institution or nursing facility" or who is described in 42 USC 1396a(a)(10)(A)(ii)(VI), is likely to meet these requirements "for at least 30 consecutive days," and is married to a person who is not in such a facility. 42 USC 1396r-5(h)(1)(A) and (B).

[3] A "community spouse" is "the spouse of an institutionalized spouse." 42 USC 1396r-5(h)(2).

[4] The parties and the Court of Appeals often refer to the SBO trusts at issue as "Medicaid trusts." This is an accurate label under state regulations, although the label is not used in the federal Medicaid statutes. A Medicaid trust is any trust or trust-like instrument that

marital property to each SBO trust or its trustee, giving up any claim of title to that property. Distributions or payments from each SBO trust were to be made on an actuarially sound basis and solely to or for the benefit of the community spouse. The actuarially sound distribution schedule required that each trustee distribute the income and resources held by the trust to each community spouse at a rate that would deplete the trust within the community spouse's expected lifetime. A short time after each SBO trust was formed, each institutionalized spouse applied for Medicaid benefits. The Department of Health and Human Services[5] and its director (collectively, the Department) determined that the entire value of the principal of each SBO trust was a countable asset for the purpose of determining each institutionalized spouse's eligibility for Medicaid benefits. Thus, the Department concluded that each institutionalized spouse did not show the requisite financial need because the value of the trust assets put their countable resources above the monetary threshold, and it denied each application.

---

meets the following five criteria: (1) "[T]he person whose resources were transferred to the trust is someone whose assets or income must be counted to determine [Medicaid] eligibility"; (2) the trust was established by the person, the person's spouse, or someone else acting in place of or at the direction of the person or the person's spouse; (3) "[t]he trust was established on or after August 11, 1993"; (4) the trust was not established by will; and (5) the trust is not a "special needs trust" or "pooled trust" as defined by state regulations. See Michigan Department of Human Services, *Bridges Eligibility Manual (BEM) 401*, BPB 2014-015 (July 1, 2014), pp 5-7. It is undisputed that the trusts at issue meet these criteria.

[5] The Department of Community Health was merged with the Department of Human Services in 2015 after the plaintiffs in Docket Nos. 156132 and 156133 filed their complaints. The combined agency is now the Department of Health and Human Services. Executive Order No. 2015-4. See *In re Rasmer Estate*, 501 Mich 18, 26 n 3; 903 NW2d 800 (2017).

In each case, the plaintiff unsuccessfully contested the Department's decision in an administrative appeal, but each decision was then reversed on appeal in the circuit court. On appeal in the Court of Appeals, all three cases were consolidated, and the Department's denial decisions were reinstated in a published opinion.

With the cases having been appealed in this Court, we conclude that the Court of Appeals erred in its interpretation of the controlling federal statutes, which caused the Court of Appeals to improperly reinstate the Department's denial decisions. As explained in this opinion, the fact that an irrevocable trust, which includes former assets of an institutionalized spouse, can make payments to a community spouse does not automatically render the assets held by the trust countable for the purpose of an institutionalized spouse's initial eligibility determination. See 42 USC 1396p(d)(3)(B); 42 USC 1396r-5(c)(2). Accordingly, we reverse the judgment of the Court of Appeals. Because the administrative hearing decision in each case suffered from the same faulty reasoning used by the Court of Appeals, this legal error may have caused the administrative law judges (ALJs) to forgo a more thorough review of the Medicaid applications at issue or to disregard other avenues of legal analysis. Therefore, rather than order that the Medicaid applications be approved at this time, we vacate the hearing decision of the ALJ in each case and remand these cases to the appropriate administrative tribunal for any additional proceedings necessary to determine the validity of the Department's decision to deny plaintiffs' Medicaid applications.[6]

---

[6] The Court of Appeals also held that it was permissible for the Department to apply changes in its application of *BEM 401* and in its reading of the federal Medicaid statutes to

## I. FACTS AND PROCEDURAL HISTORY

This appeal involves three cases that have been consolidated for the purpose of appellate review. In Docket No. 156132, Mary Ann Hegadorn (Mrs. Hegadorn) began receiving long-term care at the MediLodge Nursing Home in Howell, Michigan, on December 20, 2013. Approximately one month later, her husband, Ralph D. Hegadorn (Mr. Hegadorn), established the "Ralph D. Hegadorn Irrevocable Trust No. 1 (Sole Benefit Trust)." (Hegadorn Trust). Mr. Hegadorn is the beneficiary of the Hegadorn Trust, and neither he nor his wife is the trustee or successor trustee. Section 2.2 of the Hegadorn Trust states that the "Trustee shall distribute the Resources of the Trust at a rate that is calculated to use up all of the Resources during" Mr. Hegadorn's expected lifetime, and it includes a suggested distribution schedule that is based on the Department's policies. The Hegadorn Trust also lists another trust as a possible residual beneficiary, stating:

> At my death, if my Spouse is surviving, Trustee shall distribute the remaining trust property to the trustee of the Special Supplemental Care Trust for Mary Ann Hegadorn, created by my Will dated the same day as this Agreement, as my Will may be amended from time to time. [Hegadorn Trust, § 3.3 (formatting altered).]

On April 24, 2014, Mrs. Hegadorn applied for Medicaid benefits. The Department subsequently denied Mrs. Hegadorn's application, determining that her countable assets, including the assets that were placed in the Hegadorn Trust, exceeded the applicable financial eligibility limit.

---

applications filed before such changes occurred. We need not reach this issue, because we have determined that the Court of Appeals erred in its interpretation of the controlling Medicaid statutes.

In Docket No. 156133, Dorothy Lollar (Mrs. Lollar) began receiving long-term care at the MediLodge Nursing Home in Howell, Michigan, on May 1, 2014. Approximately a month and a half later, Mrs. Lollar's husband, Dallas H. Lollar (Mr. Lollar), established the "Dallas H. Lollar Irrevocable Trust" (Lollar Trust), which provided that it was intended to "be a 'Solely for the Benefit of' trust." Mr. Lollar is the beneficiary of the Lollar Trust, and neither he nor his wife is the trustee or successor trustee. Section 2.2 of the Lollar Trust states that the Trustee "shall . . . pay or distribute" to Mr. Lollar, "or for [his] sole benefit, during [his] lifetime such part or all of the net income and principal" of the Trust "as Trustee determines is necessary to distribute the resources in [sic] an actuarially sound basis . . . ." The Lollar Trust also lists another trust as a possible residual beneficiary, stating that in the event of Mr. Lollar's death, he "give[s] all the rest, residue and remainder of this Sole Benefit Trust to the Dallas H. Lollar Revocable Trust Agreement U/A/D June 19, 2014, and administered according to the terms of that Agreement." Lollar Trust, § 3.2b (formatting altered). On July 21, 2014, Mrs. Lollar applied for Medicaid benefits. The Department subsequently denied Mrs. Lollar's application, determining that her countable assets, including the assets that were placed in the Lollar Trust, exceeded the applicable financial eligibility limit.

In Docket No. 156134, Roselyn Ford (Mrs. Ford) began receiving long-term care at the Saline Evangelical Nursing Home in Saline, Michigan, on December 5, 2013. About a month later, Mrs. Ford's husband, Herbert W. Ford (Mr. Ford), established the "Herbert Ford Irrevocable Trust" (Ford Trust), which provided that it was intended to be "a 'solely for the benefit of' trust." Mr. Ford is the beneficiary of the Ford Trust, and neither he nor his wife is the trustee or successor trustee. The Ford Trust also provides that the "Trustee

6

shall . . . pay or distribute to [Mr. Ford], or for [his] sole benefit, during his lifetime whatever part of the net income and principal (the Resources) of the Trust that Trustee determines is necessary to distribute the resources on an actuarially sound basis." Section 3.2 of the Ford Trust lists as possible residual beneficiaries separate trusts to be established by Mr. Ford's will for the benefit of his living children and the descendants of his deceased children. On January 30, 2014, Mrs. Ford applied for Medicaid benefits. The Department subsequently denied Mrs. Ford's application, determining that her countable assets, including the assets that were placed in the Ford Trust, exceeded the applicable financial eligibility limit.[7]

Each plaintiff timely requested an administrative hearing to contest the Department's decision. With respect to Mrs. Hegadorn's and Mrs. Lollar's cases, a consolidated hearing was held before ALJ Landis Y. Lain, who affirmed the Department's decision. With respect to Mrs. Ford's case, a hearing was held before ALJ Alice C. Elkin, who similarly affirmed the Department's decision. Each ALJ agreed with the Department that *Bridges Eligibility Manual (BEM) 401* required the Department to count the assets held by each trust because the trust could make payments to the community spouse. The ALJs further concluded that this was consistent with the controlling federal statutes. The ALJs made no factual findings and rendered no conclusions of law regarding possible payments to the trusts that are listed as residual beneficiaries in the SBO trusts.

---

[7] We note that the Ford Trust and Lollar Trust also reserve to the community spouses a special testamentary power of appointment, which allows them to appoint, by will, items or funds held by the trust directly to their children or their children's descendants. This power does not allow for appointments to any other individuals or entities.

The plaintiff in each case appealed in the appropriate circuit court and, in each case, the circuit court reversed the ALJ's decision. The Department appealed each circuit court decision in the Court of Appeals, which consolidated the cases. In a published opinion, the panel reversed the circuit courts and reinstated the ALJs' decisions to deny benefits. Plaintiffs timely sought leave to appeal in this Court. We granted plaintiffs' application in an order entered March 7, 2018, stating:

> The parties shall include among the issues to be briefed whether: (1) the Court of Appeals clearly erred in holding that the trust assets of the plaintiffs' spouses and decedent Lollar's spouse are "countable assets" for purposes of Medicaid eligibility; and (2) the Department of Health and Human Services could base its decision on the retroactive application of a department policy adopted more than 45 days after the plaintiffs' applications were filed. [*Hegadorn v Dep't of Human Servs Dir*, 501 Mich 984 (2018).]

## II. STANDARD OF REVIEW

Resolution of this appeal turns on whether the federal Medicaid statutes, which govern certain aspects of the Department's Medicaid policies, allow the Department to count the assets held in a community spouse's SBO trust in determining an institutionalized spouse's eligibility for Medicaid. Final agency decisions are subject to judicial review pursuant to the Michigan Constitution, see Const 1963, art 6, § 28, and the Administrative Procedures Act (APA), MCL 24.201 *et seq*. The Michigan Constitution provides:

> All final decisions . . . of any administrative officer or agency . . . which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions . . . are authorized by law . . . . [Const 1963, art 6, § 28.]

The APA provides that, unless a different scope of review is established by law,

8

the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

(a) In violation of the constitution or a statute.

* * *

(f) Affected by other substantial and material error of law. [MCL 24.306(1).]

The APA further instructs that "[t]he court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings." MCL 24.306(2).

An administrative agency's interpretation of a statute that it is obligated to execute is entitled to "respectful consideration," but it "cannot conflict with the plain meaning of the statute." *In re Rovas Complaint Against SBC Mich*, 482 Mich 90, 108; 754 NW2d 259 (2008). We review issues of statutory interpretation de novo. *Walters v Nadell*, 481 Mich 377, 381; 751 NW2d 431 (2008). "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). When interpreting federal statutes, we strive to "give effect to the will of Congress[.]" *Walters*, 481 Mich at 381 (quotation marks and citations omitted.)

This case also requires us to construe language in trust documents. The proper construction of a trust, like the construction of a will, is a question of law subject to de novo review. See *In re Raymond Estate*, 483 Mich 48, 53; 764 NW2d 1 (2009). Our goal in interpreting trust language is to determine and give effect to the trustor's intent. *Id*. at 52. We begin by examining the language of the trust itself, and, if there is no ambiguity,

we interpret it according to its plain and ordinary meaning. *Id*.; *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985).

### III. ANALYSIS

### A. OVERVIEW OF MEDICAID

The Medicaid program is governed by a complex web of interlocking statutes, as well as regulations and interpretive documents published by state and federal agencies. The program was created by Title XIX of the Social Security Act of 1965, PL 89-97; 79 Stat 343, codified at 42 USC 1396 *et seq*. Medicaid is generally a need-based assistance program for medical care that is funded and administered jointly by the federal government and individual states. *Ketchum Estate v Dep't of Health & Human Servs*, 314 Mich App 485, 488; 887 NW2d 226 (2016). At the federal level, the program is administered by the Secretary of Health and Human Services through the Centers for Medicare & Medicaid Services (CMS). The *State Medicaid Manual* is published by CMS to help guide states in their administration of the program, including how to determine an applicant's eligibility for benefits. See *Ark Dep't of Health & Human Servs v Ahlborn*, 547 US 268, 275; 126 S Ct 1752; 164 L Ed 2d 459 (2006). " 'Each participating State develops a plan containing reasonable standards . . . for determining eligibility for and the extent of medical assistance' within boundaries set by the Medicaid statute and Secretary of Health and Human Services." *Wis Dep't of Health & Family Servs v Blumer*, 534 US 473, 479; 122 S Ct 962; 151 L Ed 2d 935 (2002), quoting *Schweiker v Gray Panthers*, 453 US 34, 36-37; 101 S Ct 2633; 69 L Ed 2d 460 (1981). "In formulating those standards, States must 'provide for taking into account only such income and resources as are, as determined in

10

accordance with standards prescribed by the Secretary, *available* to the applicant.' "

*Blumer*, 534 US at 479, quoting 42 USC 1396a(a)(17)(B).

Medicaid benefits are provided automatically for the "categorically needy," meaning persons who receive welfare payments through Aid to Families with Dependent Children (AFDC), 42 USC 601 *et seq.*, or Supplemental Security Income (SSI), 42 USC 1382 *et seq.*[8]  See 42 USC 1396a(a)(10)(A); Social Security Administration, *Program Operations Manual System* (SSA *POMS*), SI 01715.020 (August 2, 2016), available at <https://secure.ssa.gov/apps10/poms.nsf/lnx/0501715020> (accessed May 2, 2019) [https://perma.cc/E6Q9-WSMB].  Congress has also enacted an optional program, in which states may elect to participate, for those who are deemed "medically needy." *Ark Dep't of Human Servs v Schroder*, 353 Ark 885, 890; 122 SW3d 10 (2003); 42 USC 1396a(a)(10)(A)(ii).  Although medically needy individuals meet the nonfinancial requirements under either the AFDC or the SSI programs, they become eligible for Medicaid benefits only when their incomes and assets are reduced below certain established levels.  See 42 USC 1396a(a)(10)(C); 42 CFR 435.301(b)(2) and (3) (2018);

---

[8] By completing a "1634 agreement," a state may request that the Social Security Administration (SSA) make certain Medicaid eligibility determinations when making SSI eligibility determinations and agree to provide Medicaid benefits to those individuals whom the SSA deems eligible.  Social Security Administration, *Program Operations Manual System* (SSA *POMS*), SI 01730.010 (February 6, 2013), available at <https://secure.ssa.gov/apps10/poms.nsf/lnx/0501730010> (accessed May 2, 2019) [https://perma.cc/23YU-EYDR].  In states that execute a 1634 agreement, like Michigan, an application for SSI benefits is also an application for Medicaid benefits.  SSA *POMS*, SI 01730.005 (February 6, 2013), available at <https://secure.ssa.gov/apps10/poms.nsf/lnx/0501730005> (accessed May 2, 2019) [https://perma.cc/2L5F-6NWX].

11

42 CFR 435.320 (2018). Michigan has elected to include this optional coverage for the medically needy in its state Medicaid plan. Therefore, Michigan must comply with the requirements imposed by the federal Medicaid statutes. See *In re Rasmer Estate*, 501 Mich 18, 25; 903 NW2d 800 (2017); 42 USC 1396a. Plaintiffs here fall within the medically needy category for those over the age of 65. Therefore, to be eligible for Medicaid benefits, they were required to reduce their countable incomes and assets to or below $2,000. See *Mackey v Dep't of Human Servs*, 289 Mich App 688, 698; 808 NW2d 484 (2010); *BEM 400* (July 1, 2014), p 7; *BEM 402* (April 1, 2014), p 4.

As the United States Supreme Court has noted, "[b]ecause spouses typically possess assets and income jointly and bear financial responsibility for each other, Medicaid eligibility determinations for married applicants have resisted simple solutions." *Blumer*, 534 US at 479. Prior to 1988, to become eligible for Medicaid benefits, a married individual who was admitted to a nursing home was required to "spend down" all the assets jointly held with his or her spouse who remained in the marital home. See HR Rep No 100-105(II), at 59, 65-67 (2d Sess 1988), as reprinted in 1988 USCCAN 857, 881, 888-890. That changed with the enactment of the Medicare Catastrophic Coverage Act of 1988 (MCCA), codified at 42 USC 1396r-5.[9] As the Supreme Court has recently explained, the MCCA was enacted "to protect community spouses from 'pauperization' while preventing financially secure couples from obtaining Medicaid assistance," which is why "Congress

---

[9] Congress later repealed most of the MCCA through the Medicare Catastrophic Coverage Repeal Act of 1989, PL 101-234; 103 Stat 1979, but the spousal-impoverishment-prevention provisions contained in 42 USC 1396r-5 were retained.

installed a set of intricate and interlocking requirements with which States must comply in allocating a couple's income and resources." *Blumer*, 534 US at 480.

Since the enactment of the MCCA, Congress has made numerous additional amendments of the Medicaid statutes to adapt the program to changing economic realities while striving to prevent abuse of the program. Many of these adjustments concern the use and evaluation of estate planning tools like trusts and annuities. The Consolidated Omnibus Budget Reconciliation Act of 1985, PL 99-272; 100 Stat 82, formerly codified at 42 USC 1396a(k), instructed states to treat as countable assets the maximum amount of a trust's principal a trustee could pay to a Medicaid applicant if the trustee were to exercise his or her discretionary authority, whether or not that discretion was actually exercised. See 1 Kove & Kosakow, Irrevocable Trusts (4th ed, October 2018 update), § 27:9. The Omnibus Budget Reconciliation Act of 1993 (OBRA 93), PL 103-66; 107 Stat 312, repealed 42 USC 1396a(k) and replaced it with the current Medicaid trust rules. See 42 USC 1396p(d); 1 Irrevocable Trusts, § 27:9.[10] States that choose to participate in the Medicaid program are required to "comply with the provisions of section 1396p of [Title XIX] with respect to liens, adjustments and recoveries of medical assistance correctly paid, transfers of assets,, [sic] *and treatment of certain trusts*[.]" 42 USC 1396a(18) (emphasis added). As our review of these Medicaid statutes demonstrates, Congress has been

---

[10] There are also provisions, which are not at issue here, that subject an applicant to penalties for nonexempt transfers of resources during the five-year look-back period. See 42 USC 1396p(c)(1) through (5). Additional rules governing the evaluation of annuities were added by the Deficit Reduction Act of 2005, PL 109-171; 120 Stat 4, and codified at 42 USC 1396p(c)(1)(F) and (G), but they also are not at issue here, and their enactment did not modify the Medicaid trust rules codified at 42 USC 1396p(d).

particularly active in its efforts to prevent spousal pauperization while at the same time limiting the ability of wealthier individuals to shelter income and assets using estate planning tools.

## B. TREATMENT OF TRUST RESOURCES FOR AN INSTITUTIONALIZED SPOUSE'S INITIAL ELIGIBILITY DETERMINATION

The main issue in this appeal is whether assets making up the principal of an irrevocable SBO trust are countable assets for the purpose of determining an institutionalized spouse's initial eligibility for Medicaid. In Michigan, the Department administers the state Medicaid program. The Department's policies are contained in several publications, including the *BEM*, the SSA *POMS*, and the *State Medicaid Manual*.[11] A person who falls in the optional medically needy category, like each plaintiff here, cannot qualify for Medicaid benefits if his or her *countable assets* and income exceed $2,000 during the period in which he or she applies for benefits. See *Mackey*, 289 Mich App at 698; *BEM 400* at 7; *BEM 402* at 4. According to *BEM 401*, "[h]ow much of the principal of a trust is a countable asset depends on" "[t]he terms of the trust" and "[w]hether any of the principal consists of countable assets or countable income." *BEM 401* (July 1, 2014), p 10. With respect to irrevocable trusts, such as those at issue here, *BEM 401* instructs the Department to "[c]ount as the person's countable asset the value of the countable assets in

---

[11] The *State Medicaid Manual* is published by the CMS to help guide states in administering the Medicaid program. The manual is not a product of formal rulemaking and does not have the force of law. *Hobbs ex rel Hobbs v Zenderman*, 579 F3d 1171, 1186 n 10 (CA 10, 2009). However, federal courts generally consider the manual to be strong persuasive authority to the extent that it is consistent with the purpose and text of federal statutes. *Id.*; *Hughes v McCarthy*, 734 F3d 473, 478 (CA 6, 2013).

14

the trust principal if there is any condition under which the principal could be paid to or on behalf of the person from an irrevocable trust." *Id*. at 11. The legal authority for *BEM 401* derives from two parts of the federal Medicaid statutes: 42 USC 1396a and 42 USC 1396p. See *BEM 401* at 17-18. However, additional rules applicable only to institutionalized spouses are described in 42 USC 1396r-5. These additional rules serve as a starting point for evaluating an institutionalized spouse's eligibility for Medicaid benefits.

### 1. 42 USC 1396r-5

When determining an institutionalized spouse's eligibility for Medicaid benefits, a computation of the couple's total joint resources is taken "as of the beginning of the first continuous period of institutionalization," which may or may not be the same month in which one applies for benefits. 42 USC 1396r-5(c)(1)(A). The stated purpose of this first computation is to determine the amount of the "spousal share" allocated to the community spouse. 42 USC 1396r-5(c)(1)(A)(ii). The couple's resources are divided into those that are countable and those that are exempt.[12] One-half of the total value of their countable resources "to the extent either the institutionalized spouse or the community spouse has an ownership interest" is considered a spousal share. *Id*.

"The spousal share allocated to the community spouse qualifies as the [community spouse resource allowance or] CSRA, subject to a ceiling . . . indexed for inflation" by

---

[12] While 42 USC 1396r-5 does not use the terms "countable" and "exempt," it provides that the term "resources" does not include those things excluded by 42 USC 1382b(a) or (d). See 42 USC 1396r-5(c)(5). Items excluded under those sections include the couple's home, 42 USC 1382b(a)(1); household goods and personal effects, 42 USC 1382b(a)(2)(A); and funds set aside for burial expenses, 42 USC 1382b(d).

15

Congress. *Blumer*, 534 US at 482. The CSRA is the monetary value of assets that may be retained by or transferred to the community spouse without those resources being counted against the institutionalized spouse for his or her initial eligibility determination. See 42 USC 1396r-5(c)(2)(B) and (f); *Blumer*, 534 US at 482-483. Available resources in excess of the CSRA will generally disqualify an institutionalized spouse from receiving Medicaid benefits unless they are spent down prior to filing an application. 42 USC 1396r-5(c)(2); *Blumer*, 534 US at 482-483.

Once the amount of the CSRA is determined, a second calculation is required to determine the resources available to the institutionalized spouse for the purpose of determining the institutionalized spouse's initial Medicaid eligibility. 42 USC 1396r-5(c)(2). This calculation is based on the resources available to the institutionalized spouse on the day that the institutionalized spouse submits his or her application for Medicaid benefits. "In determining the resources of an institutionalized spouse at the time of application for benefits . . . , *all the resources held by* either the institutionalized spouse, community spouse, or both, shall be considered to be *available to* the institutionalized spouse" to the extent that they exceed the CSRA. 42 USC 1396r-5(c)(2)(A) and (B) (emphasis added). "[A]fter the month in which an institutionalized spouse is determined to be eligible for benefits . . . , no resources of the community spouse shall be deemed available to the institutionalized spouse." 42 USC 1396r-5(c)(4). While the MCCA contains provisions governing the treatment of income paid from a trust, see 42 USC 1396r-5(b)(2)(B),[13] its general resource allocation provisions are silent with regard to the

---

[13] Any income payable solely to a community spouse from a trust is considered to be

16

treatment of assets or resources held by a trust. The MCCA also does not provide a definition for the term "resources," but the term does not include those things excluded by 42 USC 1382b(a) or (d). See 42 USC 1396r-5(c)(5).

We are asked to consider whether the principal of an irrevocable trust, created using assets of both spouses but which may distribute payments only to or for the benefit of the community spouse, is a countable asset for the purpose of the institutionalized spouse's initial eligibility determination. Stated differently, is the principal of the irrevocable trust a "resource[] held by either the institutionalized spouse, community spouse, or both," such that it is considered "available to the institutionalized spouse"? 42 USC 1396r-5(c)(2)(A).

Assuming without deciding that the principal of an irrevocable trust constitutes a resource as that term is used in 42 USC 1396r-5, such a resource is not "held by" the institutionalized or community spouse.[14] The property that makes up the principal of a trust is not owned by or otherwise directly available to the beneficiary. Instead, the *trustee* holds title to the property that constitutes the principal of a trust and holds it in trust for the beneficiary. See MCL 700.7401; *Equitable Trust Co v Milton Realty Co*, 261 Mich 571,

---

income available only to that community spouse. 42 USC 1396r-5(b)(2)(B)(ii) (stating that if income is paid solely to the institutionalized spouse or the community spouse, "the income shall be considered available only to that respective spouse[.]"). Generally, the MCCA preserves a community spouse's income for that spouse so as to avoid affecting the institutionalized spouse's eligibility for Medicaid. See *Blumer*, 534 US at 480-481.

[14] While "held" is undefined in the statute, *Merriam-Webster's Collegiate Dictionary* (11th ed) relevantly defines "hold" as "to have possession or ownership of or have at one's disposal[.]" "When a word or phrase is not defined by the statute in question, it is appropriate to consult dictionary definitions to determine [its] plain and ordinary meaning . . . ." *People v Rea*, 500 Mich 422, 428; 902 NW2d 362 (2017).

17

577; 246 NW 500 (1933) (holding that "[t]o create a trust, there must be an assignment of designated property to a trustee with the intention of passing title thereto, to hold for the benefit of others").[15] The trust beneficiary, on the other hand, holds a right to "enforce the performance of the trust in equity." MCL 555.16. See also *Union Guardian Trust Co v Nichols*, 311 Mich 107; 18 NW2d 383 (1945). Unless the beneficiary is also a trustee, the beneficiary does not own the property forming the principal of the irrevocable trust. If either spouse retained possession and use of trust property, then the question might be closer, but that question is not raised here. In summary, the principal of an irrevocable trust generally will not be a resource available to either spouse according to 42 USC 1396r-5(c), because such property is not held by either spouse. The principal of an irrevocable trust may, however, be made legally available to an institutionalized spouse by way of the Medicaid trust rules contained in 42 USC 1396p(d).

## 2. 42 USC 1396p(d): THE MEDICAID TRUST RULES

The first two paragraphs of the Medicaid trust rules describe to whom the rules apply and how to determine whether that person created a trust. Paragraph (1) of the Medicaid trust rules begins by stating, "For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under this subchapter, subject to paragraph (4), the rules specified in paragraph (3) shall apply to a trust established by such

---

[15] *Black's Law Dictionary* similarly defines a "trustee" as "[s]omeone who stands in a fiduciary or confidential relation to another; esp., one who, having legal title to property, holds it in trust for the benefit of another and owes a fiduciary duty to that beneficiary." *Black's Law Dictionary* (10th ed).

individual."[16]  42 USC 1396p(d)(1).  While, generally speaking, an "individual" is "a particular being or thing," i.e., "a single human being," *Merriam-Webster's Collegiate Dictionary* (11th ed), the context of a term's usage in a statute affects its meaning, see *South Dearborn*, 502 Mich at 361.  Here, the context in which "an individual" is used limits the scope of possible human beings to which 42 USC 1396p(d)(1) refers.

Paragraph (1) provides that Subsection (d) applies to determining "an individual's eligibility for, or amount of, benefits . . . ."  42 USC 1396p(d)(1).  Medicaid benefits are granted only to those who apply for them and who also meet the eligibility requirements.  Thus, if an eligibility determination is being made, then the "individual" referred to in Paragraph (1) must be an applicant for Medicaid; similarly, language directing the reader's attention to the amount of benefits provided indicates that the "individual" is either an applicant for or a current recipient of Medicaid benefits.  It follows that "an individual" in 42 USC 1396p(d)(1) is a person applying for Medicaid benefits or a person who has been approved for a yet-to-be-determined amount of benefits.  Applied to the context of this appeal, the individual referred to here is the institutionalized spouse, who is the Medicaid applicant.  The plain language of 42 USC 1396p(d)(1) thus provides that, to determine an institutionalized spouse's eligibility for Medicaid benefits, the rules outlined in 42 USC 1396p(d)(3) govern trusts established by the institutionalized spouse.

---

[16] Paragraph (4) provides special rules for the treatment of three types of trusts that are not at issue in this appeal.  See 42 USC 1396p(d)(4).

Paragraph (2) of the same subsection provides the criteria for determining whether "an individual" has established a trust. 42 USC 1396p(d)(2). For the purposes of Subsection (d), "an individual" has

> established a trust if assets[17] of the individual were used to form all or part of the corpus of the trust and if any of the following individuals established such trust other than by will:

---

[17] 42 USC 1396p(h) provides the following definition of "assets":

> (1) The term "assets", with respect to an individual, includes all income and resources of the individual and of the individual's spouse, including any income or resources which the individual or such individual's spouse is entitled to but does not receive because of action—

> (A) by the individual or such individual's spouse,

> (B) by a person, including a court or administrative body, with legal authority to act in place of or on behalf of the individual or such individual's spouse, or

> (C) by any person, including any court or administrative body, acting at the direction or upon the request of the individual or such individual's spouse.

The Court of Appeals cited this definition for the proposition that "Congress has clearly indicated that an institutionalized individual's assets include not only those that he or she has, but *also* those that his or her spouse has, 42 USC 1396p(h)(1), and that remains true even when those assets are placed into a trust by the spouse, 42 USC 1396d(d)(2)(A)(i) and (ii)." *Hegadorn v Dep't of Human Servs Dir*, 320 Mich App 549, 569; 904 NW2d 904 (2017). This statement is partially correct.

Generally speaking, marital assets are considered jointly and, before the trusts were formed, income and resources belonging to the community spouse would be considered assets of the institutionalized spouse. However, once resources are moved into an irrevocable trust, they cease being assets owned or held by either spouse and become assets owned and held by the trust or trustee. Moreover, transferring one's income and property to one's spouse or directly into a trust is not an "action . . . by the individual or such individual's spouse" that deprives either spouse of "resources which the individual or such

(i) The individual.

(ii) The individual's spouse.

(iii) A person, including any court or administrative body, with legal authority to act in place of or on behalf of the individual or the individual's spouse.

(iv) A person, including any court or administrative body, acting at the direction or upon the request of the individual or the individual's spouse. [42 USC 1396p(d)(2)(A).]

Therefore, when a community spouse creates a trust, other than by will, using assets of his or her institutionalized spouse, that action is legally attributed to the institutionalized spouse for the purposes of the institutionalized spouse's Medicaid eligibility determination.

Deciding that an institutionalized spouse is an individual who has established a trust does not, however, end the inquiry. Paragraph (2) only describes the conditions for when a Medicaid applicant is deemed to have established a trust. The rules described in Paragraph (3) govern whether the assets held by such a trust are available to the Medicaid applicant and thus countable for his or her initial eligibility determination.

---

individual's spouse is entitled to . . . ." 42 USC 1396p(h)(1). Resources that one presently has both title to and possession of are not resources that one is entitled to in the future, and transferring away such resources does not trigger 42 USC 1396p(h)(1). This is consistent with CMS's interpretation of the definition of "asset," see CMS, *State Medicaid Manual*, § 3257(B)(3) (rev 64), which lists among the examples of actions that trigger the asset rule: (a) waiving the right to payment of pension income, (b) waiving a right to receive an inheritance, (c) rejecting or refusing to accept injury settlements, and (d) diverting tort settlements. Each example presents a situation in which someone has a legal right to receive income or property in the future, but that right is never realized because of some affirmative action. Such conditions do not exist here.

21

## 3.  42 USC 1396p(d)(3)(B): THE ANY-CIRCUMSTANCES RULE

Once it is determined that a Medicaid applicant has established a trust, the question becomes whether assets held by the trust are available to the applicant.  The trust rules in 42 USC 1396p(d)(3) treat revocable trusts and irrevocable trusts differently.  Generally, the principal of a revocable trust is always considered an asset available to the Medicaid applicant who formed the trust.  See 42 USC 1396p(d)(3).  This is unsurprising, as a trustor can typically dissolve a revocable trust and reclaim title and possession of those things held by the trust.

The rules for irrevocable trusts are more intricate.  Notably, the rules do not assume that assets placed in an irrevocable trust are available to the Medicaid applicant.  Instead, when assessing an irrevocable trust, the "any-circumstances rule" applies:

> (i) if there are *any circumstances* under which *payment from the trust could be made to or for the benefit of the individual*, the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made *shall be considered resources available to the individual*, and payments from that portion of the corpus or income—
>
> (I) to or for the benefit of the individual, shall be considered income of the individual, and
>
> (II) for any other purpose, shall be considered a transfer of assets by the individual subject to subsection (c); and
>
> (ii) any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual *shall be considered*, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) *to be assets disposed by the individual for purposes of subsection (c)*, and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date.  [42 USC 1396p(d)(3)(B) (emphasis added).]

22

Focusing on the statutory language, "any" is undefined within the statute itself, but is commonly defined as "one or some indiscriminately of whatever kind" or "one, some, or all indiscriminately of whatever quantity." *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, the use of the term "any circumstances" demonstrates that we are to consider not only obvious circumstances, but also those that are hypothetical or even unlikely. However, the rule also includes key limitations. The rule instructs us to consider only possible "payments from the trust," indicating that there must be a nexus between the trust and the recipient or beneficiary of the payment. We are next told that only those payments that could be made "to or for the benefit of the individual" fall within the rule. If there are circumstances under which payments from the trust can be made to or for the benefit of the individual, then the portion of the principal of the trust from which such payments would come is deemed available to the individual, and thus countable for determining the individual's eligibility for Medicaid benefits. If no such circumstances exist, then the portion of the principal derived from the applicant's assets is not a countable asset for the applicant's eligibility determination. See 42 USC 1396p(c).[18]

Correctly applying the any-circumstances rule requires understanding to whom "the individual" refers in 42 USC 1396p(d)(3)(B). The Department urges us to read "the individual" as referring to anyone whose resources must be evaluated in assessing a Medicaid application, without regard to whether that person is the Medicaid applicant or

---

[18] If assets held by a trust are not assets available to the Medicaid applicant, then those trust assets are treated as assets transferred by the applicant, which may subject the applicant to divestment penalties. See 42 USC 1396p(c). As the Department has stated, divestment penalties are not at issue in this appeal. See Appellee's Brief, p 14.

23

the applicant's spouse. Applied here, the Department reads "the individual" as referring to the person applying for Medicaid benefits (the institutionalized spouse), the community spouse, or both. This was also the meaning adopted by the Court of Appeals. However, we conclude that this interpretation suffers from several critical flaws.

As already discussed, the context in which a statutory term is used affects its meaning. See *South Dearborn*, 502 Mich at 361. As with Paragraphs (1) and (2) of 42 USC 1396p(d), the context in which "the individual" is used limits the scope of possible human beings to which 42 USC 1396p(d)(3)(B) refers. The first limitation is the use of the definite article "the" preceding "individual." This suggests that "the individual" referred to in 42 USC 1396p(d)(3)(B)(i) is a single person, as opposed to an open class of all people. See *Massey v Mandell*, 462 Mich 375, 382 n 5, 614 NW2d 70 (2000) (" 'The' and 'a' have different meanings. 'The' is defined as 'definite article. 1. (used, [especially] before a noun, with a specifying or particularizing effect, as opposed to the indefinite or generalizing force of the indefinite article a or an) . . . .' *Random House Webster's College Dictionary*, p 1382.").

Additionally, Paragraph (1) of Subsection (d) begins by stating, "[f]or purposes of determining *an individual's* eligibility for, or amount of," Medicaid benefits, "the rules specified in paragraph (3) shall apply to a trust established by *such individual*." 42 USC 1396p(d)(1) (emphasis added). As discussed in Part III(B)(2) of this opinion, Paragraph (1) uses "an individual" to refer to a person applying for Medicaid benefits or a person who qualifies for benefits, but the amount of those benefits must be determined.[19] Paragraph

---

[19] The *State Medicaid Manual* generally uses the term "individual" in the same manner:

24

(1) then states that Paragraph (3) applies to a trust established by that applicant or recipient. Thus, while "an individual" in Paragraph (1) can be read as referring to a potential class of persons, when "such individual" establishes a trust, that class is reduced to a single person for the purposes of Paragraph (3). Paragraph (2) of Subsection (d) also refers to "an individual" when describing whether such individual established a trust, and it contrasts that term with "the individual's spouse." 42 USC 1396p(d)(2)(A)(i) and (ii).

Reading these provisions together, it follows that when Paragraph (3) refers to "the individual," it is referring to the same individual whose eligibility for, or amount of, benefits is being determined and who has established a trust under Paragraph (2): the applicant for or recipient of Medicaid benefits. When considering the eligibility of an institutionalized spouse for Medicaid benefits, "the individual" must be read as referring to the institutionalized spouse to the exclusion of the community spouse, who, by definition, is not applying for or receiving Medicaid benefits.[20]

We find further support for this reading by reference to markedly different language in the rules governing trusts under the SSI program. See 42 USC 1382b(e)(2) and (3). The SSI program contains a nearly identical any-circumstances rule with one key difference: it

---

"Individuals to Whom Trust Provisions Apply.--This section applies to any individual who establishes a trust and who is an applicant for or recipient of Medicaid." CMS, *State Medicaid Manual*, § 3259.3 (rev 64), p 3-3-109.26.

[20] According to CMS, there may be an exception to this rule when the community spouse is acting on the applicant's behalf. See CMS, *State Medicaid Manual*, § 3259.6(D), p 3-3-109.29 ("Payments are considered to be made to the individual when any amount from the trust . . . is paid directly to the individual *or to someone acting on his/her behalf*, e.g., *a guardian or legal representative*.") (emphasis added). However, we need not reach this issue today.

25

explicitly differentiates between the individual and the individual's spouse. See 42 USC 1382b(e)(3)(B) ("[I]f there are any circumstances under which payment from the trust could be made to or for the benefit of *the individual* (*or of the individual's spouse*) . . . .") (emphasis added). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v United States*, 464 US 16, 23; 104 S Ct 296; 78 L Ed 2d 17 (1983) (quotation marks and citation omitted). See also *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993) ("Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there."). When Congress intended a provision of the Medicaid or SSI statutes to apply to both the applicant and the applicant's spouse, it has stated so expressly. Moreover, the Medicaid trust rules in 42 USC 1396p(d) were added by OBRA 93, six years before Congress added the SSI trust rules in 42 USC 1382b(e) with the Foster Care Independence Act of 1999, PL 106-169; 113 Stat 1822. Had Congress intended the two rules to operate identically, as the Department suggests, then Congress likely would have used identical language in both 42 USC 1396p(d)(3)(B) and 42 USC 1382b(e)(3)(B).[21]

---

[21] The Department further argues that *BEM 401* requires evaluating a Medicaid applicant's resources under both the Medicaid and the SSI any-circumstances rules. We find no legal support for this proposition. First, as already discussed, *BEM 401* cites 42 USC 1396a and 42 USC 1396p as the legal basis for the rule, not 42 USC 1382b(e). Second, Michigan's state Medicaid plan states that the Department "complies with the provisions of section 1917d of the [Social Security] Act, as amended by OBRA 93, with regard to trusts."

Reading "the individual" in this manner and in the context of this appeal, 42 USC 1396p(d)(3)(B) refers only to an institutionalized spouse and not a community spouse. As *BEM 401* is based primarily on 42 USC 1396p(d)(3)(B) and incorporates the any-circumstances rule into Michigan's Medicaid policies, this same restriction applies to *BEM 401*, despite the use of the term "person" in place of "individual." The any-circumstances rule, therefore, makes assets held by an irrevocable trust available to an institutionalized spouse if there are any circumstances, whether likely or hypothetical, under which the trust could make a payment to or for the benefit of the institutionalized spouse. If an irrevocable trust can make payments only to the community spouse, then those payments will satisfy the any-circumstances rule only if there is evidence that the payments could be for the benefit of the institutionalized spouse.[22] If application of 42 USC 1396p(d)(3)(B) makes

Michigan Department of Health and Human Services, *State Plan Under Title XIX of the Social Security Act Medical Assistance Program*, Attachment 2.6A, p 26 (effective July 1, 1996). Section 1917d is codified at 42 USC 1396p(d), not 42 USC 1382b(e). Third, the Department's argument is foreclosed by 42 USC 1396a(a)(10)(G), which instructs a state to "disregard the provisions of subsections (c) and (e) of section [42 USC] 1382b" when it applies the "eligibility criteria of the [SSI] program under subchapter XVI for purposes of determining eligibility for medical assistance under the State plan of an individual who is not receiving [SSI] . . . ." Congress added 42 USC 1396a(a)(10)(G) and the SSI trust rules with the enactment of the Foster Care Independence Act. Plaintiffs here are medically needy applicants who are not receiving SSI; therefore, 42 USC 1382b(c) and (e) do not apply to evaluating their eligibility for Medicaid benefits.

[22] The Supreme Judicial Court of Massachusetts interprets the any-circumstances rule, 42 USC 1396p(d)(3)(B)(i), in the same manner. See *Daley v Secretary of Executive Office of Health & Human Servs*, 477 Mass 188, 193; 74 NE3d 1269 (2017) ("The effect of the [any-circumstances] test is that if the trustee is afforded even a 'peppercorn of discretion' to make payment of principal to the applicant, or if the trust allows such payment based on certain conditions, then the entire amount that the applicant could receive under 'any state of affairs' is the amount counted for Medicaid eligibility.").

assets held by an irrevocable trust available to an institutionalized spouse, then the value of such assets is countable for the purposes of 42 USC 1396r-5(c).

There is no inconsistency created by our reading of 42 USC 1396r-5 and 42 USC 1396p(d), and therefore the preemptive provision of 42 USC 1396r-5(a)(1) does not apply.[23] As discussed before, the general resource-allocation rules of 42 USC 1396r-5(c), on their own, do not treat assets held by a trust as a resource available to either spouse. If a resource is not available to either spouse, then it is not a countable asset for the purpose of an institutionalized spouse's initial eligibility determination. See 42 USC 1396r-5(c)(2). The specific provisions governing the treatment of trusts in 42 USC 1396p(d) make the vast majority of assets held by a trust created by an institutionalized spouse available to that spouse by operation of law, while leaving open the possibility that some such assets will remain legally unavailable. The general provisions of 42 USC 1396r-5 can therefore be read in harmony with the specific provisions of 42 USC 1396p(d), and no inconsistency exists. See *People v Calloway*, 500 Mich 180, 185-186; 895 NW2d 165 (2017) ("[W]hen a statute contains a general provision and a specific provision, the specific provision controls."); *People v Mazur*, 497 Mich 302, 313; 872 NW2d 201 (2015) ("Under the [*in pari materia*] doctrine, statutes that relate to the same subject or that share a common purpose should, if possible, be read together to create a harmonious body of law.").

---

[23] 42 USC 1396r-5(a)(1) states:

> In determining the eligibility for medical assistance of an institutionalized spouse (as defined in subsection (h)(1)), the provisions of this section supersede any other provision of this subchapter (including sections 1396a(a)(17) and 1396a(f) of this title) which is inconsistent with them.

In summary, the principal of an irrevocable trust formed solely for the benefit of a community spouse is not per se a "resource available" to an institutionalized spouse under 42 USC 1396r-5(c)(2) for the purpose of determining an institutionalized spouse's eligibility for Medicaid benefits. Assets making up the principal of such a trust are not automatically considered countable assets for Medicaid eligibility determinations. However, the principal of an irrevocable trust *may* become a resource available to an institutionalized spouse, and thus a countable asset, if the following conditions are met: (1) assets of the institutionalized spouse are used to form the principal of the trust, 42 USC 1396p(d)(2)(A); (2) the institutionalized spouse, his or her spouse, or one of the other entities listed under 42 USC 1396p(d)(2)(A)(i) through (iv) established the trust using a means other than a will; and (3) there are "any circumstances under which payment from the trust could be made to or for the benefit of" the institutionalized spouse, 42 USC 1396p(d)(3)(B)(i).

## IV. APPLICATION

To determine whether the SBO trusts at issue allow for a payment to be made "to or for the benefit of" the institutionalized spouses, we must look to the language of the trust documents themselves. 42 USC 1396p(d)(3)(B); *BEM 401* at 10. If the principal of each SBO trust at issue is rightly considered to be a countable asset, the Department properly denied plaintiffs' applications. However, if the Department has deemed, as countable assets, property that the federal statutes do not consider available to plaintiffs, then the Department's decisions are contrary to law.

29

It is undisputed that each plaintiff is an individual whose eligibility for Medicaid benefits is being determined under 42 USC 1396p(d)(1). It is also undisputed that, in each case, assets of the institutionalized spouse were used to establish the SBO trusts. Accordingly, the institutionalized spouses in these cases are individuals who have established a trust pursuant to 42 USC 1396p(d)(2). The SBO trusts at issue are irrevocable trusts, meaning the principal of each trust is not automatically rendered available to the institutionalized spouse. 42 USC 1396p(d)(3)(A) and (B). Furthermore, the property and income that make up the principal of the SBO trusts at issue are not held by the institutionalized spouses or the community spouses. Rather, title to the property that is now the principal of each trust was transferred to the trust or trustee, and the money that forms part of the principal was moved into bank accounts controlled by the trustee. There also has been no suggestion that the community spouses retain possession of the tangible property that forms the principals of the trusts. Therefore, the principals of the SBO trusts are not automatically considered resources available to any of the spouses under 42 USC 1396r-5(c). Accordingly, the principal of each SBO trust can be considered a resource available to the institutionalized spouse, and thus a countable asset, only if made so by operation of the any-circumstances rule in 42 USC 1396p(d)(3)(B).

As the Court of Appeals correctly noted, each of the SBO trusts at issue instructs the trustee to "use up" or deplete the entirety of the principal during the community spouse's lifetime. All three SBO trusts also include language instructing the trustees to distribute the assets "on a[n] actuarially sound basis," which means that the "spending must be at a rate that will use up all the resources during the person's lifetime." *BEM 405* (July 1, 2014), p 12. However, the Court of Appeals erroneously concluded that, because the

30

community spouses could be paid by the trusts, this automatically created a " 'condition under which the principal could be paid to or on behalf of the person from an irrevocable trust,' " meaning that "the assets in each trust were properly determined to be countable assets by the Department. *BEM 401* at 12." *Hegadorn v Dep't of Human Servs Dir*, 320 Mich App 549, 563-564; 904 NW2d 904 (2017). The Court of Appeals read the word "person" in *BEM 401* as referring to both the applicants and their spouses in all circumstances. As already discussed, the rule in *BEM 401* is derived from 42 USC 1396a and the any-circumstances rule in 42 USC 1396p(d)(3)(B). The any-circumstances rule makes assets in an irrevocable trust available to a Medicaid applicant only if there are circumstances under which "a payment from the trust" could be made "to or for the benefit of" the applicant. 42 USC 1396p(d)(3)(B). The Department's contrary interpretation and application of *BEM 401*, which incorporates the federal any-circumstances rule into Michigan's Medicaid policies, is not entitled to respectful consideration because it is foreclosed by the text of 42 USC 1396p(d)(3)(B). See *Rovas*, 482 Mich at 108.

In determining whether payments can be made from a trust to an individual or for the individual's benefit, CMS instructs the Department to "take into account any restrictions on payments, such as use restrictions, exculpatory clauses, or limits on trustee discretion that may be included in the trust." CMS, *State Medicaid Manual*, § 3259.6(E) (rev 64), p 3-3-109.30. The SBO trusts at issue all contain language stating that distributions or payments from the trust may only be made to or for the *benefit* of the *respective community spouse* and that the trust resources may be used only for the

31

*community spouse's benefit*.[24] The ALJs and the Court of Appeals recognized this but erred by concluding that payments to or for the benefit of the community spouses were available to the institutionalized spouses. Because the community spouses are not themselves applying for or receiving Medicaid benefits, they are not "the individual" referred to in 42 USC 1396p(d)(3)(B).[25] Thus, the Court of Appeals erred by holding that the possibility of a distribution from each SBO trust to each community spouse automatically made the assets held by each SBO trust countable assets for the purposes of

---

[24] See Lollar Trust, § 2.2 ("Trustee shall from time to time during the fiscal year pay or distribute to me, or for my sole benefit, during my lifetime . . . part or all of the net income and principal . . . . During my lifetime, no Resources of the Trust can be used for anyone other than me, except for Trustee fees."); Hegadorn Trust, § 2.2 ("Trustee shall from time to time during the fiscal year pay or distribute to me, or for my sole benefit, during my lifetime . . . part or all of the net income and principal . . . . During my lifetime, no Resources of the Trust can be used for anyone other than me."); Ford Trust, § 2.2 ("Trustee shall from time to time during the fiscal year pay or distribute to me, or for my sole benefit, during my lifetime . . . part of the net income and principal . . . . During my lifetime, no Resources of the Trust may be used for anyone other than me, except for Trustee Fees.").

[25] We note that CMS has advised that "the individual" might sometimes include an applicant's spouse when that spouse is acting on behalf of the applicant. See CMS, *State Medicaid Manual*, § 3257(B)(1), p 3-3-109 ("As used in this instruction, the term 'individual' includes the individual himself or herself, as well as . . . [t]he individual's spouse, *where the spouse is acting in the place of or on behalf of the individual*[.]") (emphasis added); § 3259.6(D), p 3-3-109.29 ("Payments are considered to be made to the individual when any amount from the trust . . . is paid directly to the individual *or to someone acting on his/her behalf*, e.g., *a guardian or legal representative*.") (emphasis added). There are documents in the administrative record indicating that Mr. Hegadorn was made the legal guardian of his wife prior to creating the Hegadorn Trust and that Mrs. Lollar granted to her husband a durable power of attorney prior to the creation of the Lollar Trust. ALJ Lain made no findings of fact or conclusions of law with regard to these legal instruments, and the Department has not argued that these documents should affect our analysis. Accordingly, we decline to address whether these legal instruments affect plaintiffs' eligibility for benefits at this time.

32

the respective institutionalized spouses' initial eligibility determination.[26] Accordingly, we reverse the Court of Appeals judgment because it was premised on an incorrect reading of the controlling statutes and thus was contrary to law. It follows that the ALJs' decisions are also contrary to law and cannot stand, given that they all suffer from the same faulty reasoning employed by the Court of Appeals. See MCL 24.306(1)(a) and (f).

The question now becomes what relief should be granted. The APA gives this Court some discretion in crafting relief that is appropriate to each case arising from an administrative appeal. See MCL 24.306(2) ("The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings."). The sheer complexity of the Medicaid program and the Department's legitimate concerns about potential abuse are paramount considerations in determining what relief is warranted. We further note that, given the reasoning employed in resolving the administrative appeals, the ALJs may have forgone consideration of alternative avenues of legal analysis. In light of these concerns, we decline to order that the Department approve plaintiffs' Medicaid applications at this time. Instead, we vacate the final administrative hearing decision in

---

[26] We acknowledge that our decision on this issue is at odds with the opinion of the United States Court of Appeals for the Third Circuit in *Johnson v Guhl*, 357 F3d 403, 408-409 (CA 3, 2004) (holding that 42 USC 1396p(d)(3)(B)(i) is satisfied if "[o]nce the community spouse receives these payments, there is nothing preventing her or him from sharing them with the institutionalized spouse as well."). While the Third Circuit appears to agree that "the individual" refers to an applicant for or recipient of Medicaid benefits, its conclusory analysis disregards the statutory language requiring that the payment be a "payment *from the trust*" that "could be made *to or for the benefit of* the individual." 42 USC 1396p(d)(3)(B)(i) (emphasis added). The Third Circuit's broad language also effectively reads away any difference in the language used in the § 1396p(d)(3) any-circumstances rule and the § 1382b(e) any-circumstances rule.

33

each case and remand each case to the appropriate administrative tribunal for the proper application of the any-circumstances test. If the ALJs determine that circumstances exist under which payments from the trusts could be made to or for the benefit of the institutionalized spouse, then the ALJs should explain this rationale and affirm the Department's decision. However, if no such circumstances exist, the ALJs should reverse the Department's decisions and order that the Medicaid applications be approved.

## V. CONCLUSION

Neither 42 USC 1396r-5 nor 42 USC 1396p(d) automatically makes marital assets placed in an irrevocable trust for the sole benefit of a community spouse countable assets for the purpose of an institutionalized spouse's initial eligibility determination. Rather, such assets become countable only if circumstances exist under which the trust could make a payment to or for the benefit of the institutionalized spouse. Accordingly, we reverse the judgment of the Court of Appeals.

Because the ALJs' decisions were largely grounded in the same flawed legal reasoning that was employed by the Court of Appeals, we vacate the final hearing decision of the ALJ in each case. We remand all three cases for any additional administrative proceedings necessary to evaluate the legal validity of the Department's decision to deny each plaintiff's Medicaid application. See MCL 24.306(2). We do not retain jurisdiction.

Richard H. Bernstein
Bridget M. McCormack
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Elizabeth T. Clement

34

# STATE OF MICHIGAN

## SUPREME COURT

RALPH D. HEGADORN, Personal
Representative of the Estate of MARY
HEGADORN,

        Plaintiff-Appellant,

v                                         No. 156132

DEPARTMENT OF HUMAN SERVICES
DIRECTOR,

        Defendant-Appellee.

---

DEBORAH D. TRIM, Personal
Representative of the Estate of DOROTHY
LOLLAR,
        Plaintiff-Appellant,

v                                         No. 156133

DEPARTMENT OF HUMAN SERVICES
DIRECTOR,
        Defendant-Appellee.

---

DENISE TINDLE, Personal Representative
of the ESTATE OF ROSELYN FORD,
        Plaintiff-Appellant,

v                                         No. 156134

DEPARTMENT OF HEALTH AND
HUMAN SERVICES,
        Defendant-Appellee.

---

MCCORMACK, C.J. (*concurring*).

The plaintiffs[1] applied for Medicaid to help defray the costs of nursing-home services. That's what Medicaid is for, but eligibility for its financial assistance is means-tested. To satisfy Medicaid's income and resource limits while preserving their assets, the plaintiffs each formed and funded an irrevocable "solely for the benefit of" (SBO) trust. The critical feature of these SBO trusts is that during each plaintiff's *spouse's* lifetime, distributions from the trusts could be made only to that spouse. I agree with the majority that property held in these SBO trusts is not countable toward Medicaid's resource limit because "the individual" in 42 USC 1396p(d)(3)(B) refers to the Medicaid applicant.

But I also believe that the plaintiffs' transfer of assets into the trusts triggers Medicaid's divestment rules. This issue has not been presented here, for understandable procedural reasons. I believe such a discussion is necessary, however, as a caution. If I am correct, then the plaintiffs' overall planning strategy would be undermined: although they would be able to satisfy Medicaid's threshold resource test, the plaintiffs would be disqualified from receiving Medicaid benefits for a time period calculated by reference to the value of the transferred assets. And because their strategy involves irrevocable trusts, there is no way to unwind the transfer. In short, the majority opinion should not be interpreted as permitting a married Medicaid applicant to shelter and preserve any amount of wealth without restriction, and then immediately receive financial assistance as if she did not have it.

---

[1] "The plaintiffs" refers to the original plaintiffs who began these proceedings.

## I. MEDICAID BACKGROUND

The federal Medicaid Assistance Program (Medicaid), enacted as Title XIX of the Social Security Act, 42 USC 1396 *et seq*. (the Medicaid Act or the Act), is a program through which the federal government shares, along with participating states, the cost of providing financial assistance for medical services to "families with dependent children and [to] aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services . . . ." 42 USC 1396-1. State participation in the program is optional. States that do participate, however, must comply with federal law, including those provisions set forth in 42 USC 1396p regarding "liens, adjustments and recoveries of medical assistance correctly paid[,] transfers of assets, and treatment of certain trusts[.]" 42 USC 1396a(a)(18). In Michigan, the program is administered by the Department of Health and Human Services (the Department), of which defendant is the director. MCL 400.105; see note 5 of the majority opinion.

To be eligible for Medicaid financial assistance for nursing-home services, each plaintiff's countable assets[2] could not exceed $2,000. See Part III(B)(1) of the majority opinion. The plaintiffs established these SBO trusts to reduce their countable assets to satisfy this limit.

---

[2] The term "assets" encompasses both "resources" and "income." 42 USC 1396p(h)(1). While the parties use the term "countable assets" to refer to Medicaid's nonincome eligibility criteria, it should be understood that, for purposes of determining financial eligibility, "resources" and "income" are evaluated differently. See 42 USC 1396r-5(b) and (c) and Part I(A) of this opinion.

## A. ELIGIBILITY FOR NURSING-HOME SERVICES

For married applicants such as the plaintiffs, the eligibility rules for nursing-home services begin with the "spousal impoverishment" provisions of the Medicaid Act. See 42 USC 1396r-5. Enacted by Congress in 1988, these provisions "permit a spouse living at home (called the 'community spouse') to reserve certain income and assets to meet the minimum monthly maintenance needs he or she will have when the other spouse (the 'institutionalized spouse'[3]) is institutionalized, usually in a nursing home, and becomes eligible for Medicaid." *Wis Dep't of Health & Family Servs v Blumer*, 534 US 473, 478; 122 S Ct 962; 151 L Ed 2d 935 (2002).

Congress achieved this in two ways. First is the treatment of income. For any month in which the institutionalized spouse receives nursing-home services, the Medicaid Act provides that "no income of the community spouse shall be deemed available to the institutionalized spouse." 42 USC 1396r-5(b)(1). "The community spouse's income is thus preserved for that spouse and does not affect the determination whether the institutionalized spouse qualifies for Medicaid. In general, such income is also disregarded in calculating the amount Medicaid will pay for the institutionalized spouse's care after

---

[3] The term "institutionalized spouse" refers to "an individual who . . . is in a medical institution or nursing facility . . . and . . . is married to a spouse who is not in a medical institution or nursing facility[.]" 42 USC 1396r-5(h)(1). The "community spouse" is "the spouse of an institutionalized spouse." 42 USC 1396r-5(h)(2). Elsewhere, Congress has used the term "institutionalized individual" to refer to "an individual who is an inpatient in a nursing facility . . . ." 42 USC 1396p(h)(3). Congress, however, has not provided a specific definition for the spouse of an "institutionalized individual," presumably because 42 USC 1396p (unlike the spousal-impoverishment provisions) applies to Medicaid applicants regardless of their marital status. More confusing yet, Congress in 42 USC 1396p uses undefined terms such as "an individual," "the individual," and "the individual's spouse."

eligibility is established." *Blumer*, 534 US at 480-481; see 42 USC 1396r-5(b)(2). The spousal-impoverishment provisions also establish a "minimum monthly maintenance needs allowance." 42 USC 1396r-5(d)(3). Under 42 USC 1396r-5(d), if the community spouse's income is ever less than the allowance, the Act permits the institutionalized spouse to reallocate her income (up to the amount of the shortfall) to the community spouse, thereby resulting in Medicaid's paying a greater portion of the institutionalized spouse's nursing-home expenses. *Blumer*, 534 US at 481-482.

The second way in which Congress protects a community spouse is through the Act's treatment of marital resources and the "community spouse resources allowance" (CSRA). As the Court explained in *Blumer*:

> For purposes of establishing the institutionalized spouse's Medicaid eligibility, a portion of the couple's assets is reserved for the benefit of the community spouse. [42 USC 1396r-5(c)(2)]. To determine that reserved amount (the CSRA), the total of all of the couple's resources (whether owned jointly or separately) is calculated as of the time the institutionalized spouse's institutionalization commenced; half of that total is then allocated to each spouse (the "spousal share"). [42 USC 1396r-5(c)(1)(A)]. The spousal share allocated to the community spouse qualifies as the CSRA, subject to [a statutory maximum and minimum]. The CSRA is considered unavailable to the institutionalized spouse in the eligibility determination, but all resources above the CSRA (excluding a small sum set aside as a personal allowance for the institutionalized spouse, currently $2,000 . . . ) must be spent before eligibility can be achieved. [42 USC 1396r-5(c)(2)]. [*Blumer*, 534 US at 482-483.]

Together, these rules "assur[e] that the community spouse has a sufficient—but not excessive—amount of income and resources available." *Id*. at 480 (citation and quotation marks omitted).

5

## B. THE MEDICAID TRANSFER RULES

To prevent an institutionalized individual from simply giving away her assets to satisfy the Medicaid Act's eligibility criteria, Congress implemented a divestment penalty. This penalty is based on a look-back date—a set time before the individual's application for Medicaid benefits. 42 USC 1396p(c)(1)(B).[4] If an institutionalized individual or her spouse "disposes of assets for less than fair market value" at any point after the look-back date, 42 USC 1396p(c)(1)(A), she is disqualified from receiving financial assistance for nursing-home services for a length of time set by statutory formula, see 42 USC 1396p(c)(1)(D) and (E). That disqualification applies regardless of whether the individual is otherwise eligible for or even receiving Medicaid financial assistance. See *id*. The period of disqualification is determined by dividing the total uncompensated value of the transferred assets by the average monthly cost of nursing-home services. 42 USC 1396p(c)(1)(E)(i).

In plainer terms, if either spouse disposes of assets for less than fair market value after the look-back date, the institutionalized spouse is disqualified from receiving financial assistance for a period that approximates the uncompensated value of the transferred assets.

But as with most rules, there are exceptions. There are certain "permissive" asset transfers, set forth in 42 USC 1396p(c)(2), that will not trigger a penalty:

> (c) Taking into account certain transfers of assets
>
> * * *
>
> (2) An individual shall not be ineligible for medical assistance by reason of [42 USC 1396p(c)(1)] to the extent that—

---

[4] Here, 60 months before plaintiffs' dates of application.

*  *  *

(B) the assets—

(i) were transferred to the individual's spouse or to another for the sole benefit of the individual's spouse,

(ii) were transferred from the individual's spouse to another for the sole benefit of the individual's spouse,

(iii) were transferred to, or to a trust (including a trust described in [42 USC 1396p(d)(4)]) established solely for the benefit of, the individual's child described in [42 USC 1396p(c)(2)(A)(ii)(II)[5]], or

(iv) were transferred to a trust (including a trust described in [42 USC 1396p(d)(4)]) established solely for the benefit of an individual under 65 years of age who is disabled[.][6]

The permissive transfers set forth at 42 USC 1396p(c)(2)(B)(i) and (ii) are important here. They allow unlimited transfers between an institutionalized individual and her spouse (that is, between the institutionalized spouse and the community spouse). This is sensible: as discussed, the Medicaid Act's resource rules require the Department to begin its initial resource evaluation by computing "the total value of the resources to the extent either the institutionalized spouse or the community spouse has an ownership interest . . . ." 42 USC 1396r-5(c)(1)(A)(i); see *Blumer*, 534 US at 482-483.

---

[5] That is, a child who is under 21, blind, or disabled.

[6] Additionally, the Medicaid Act permits an individual to transfer his or her home without incurring a penalty, so long as the transferee is the individual's spouse or, under specific conditions, close relatives. 42 USC 1396p(c)(2)(A). While the value of an individual's home is generally not included in the initial resource evaluation, a home is considered an "asset" for purposes of the transfer rules. See 42 USC 1396p(c)(5); 42 USC 1382b(a)(1). Thus, a transfer of the home after the look-back date will incur a divestment penalty, unless the transfer is specifically permitted under 42 USC 1396p(c)(2)(A).

7

Again, in plainer terms: there is no reason to penalize an interspousal transfer of assets because resources belonging to both spouses are combined in determining an applicant's *eligibility*. Because spousal resources are accounted for in the Medicaid eligibility process no matter which spouse holds them, there is no need to penalize a transfer from one spouse to the other.

In addition to interspousal transfers, the Medicaid Act does not penalize a transfer from either spouse to a third party if the transfer is "for the sole benefit of" the Medicaid applicant's spouse (the community spouse). 42 USC 1396p(c)(2)(B)(i) and (ii). Unlike interspousal transfers, however, this exception can have a much greater impact on eligibility, because resources that are "held" by a third party might not be considered countable assets for purposes of Medicaid's financial eligibility determination. See 42 USC 1396r-5(c)(2)(A) ("In determining the resources of an institutionalized individual . . . [,] except as provided in subparagraph (B) [concerning the CSRA], all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse . . . ."). This exemption is pivotal to the plaintiffs' Medicaid planning strategy; if the transfers of assets into the SBO trusts are not "for the sole benefit of" the community spouse, then the transfers should incur a divestment penalty.

Congress also provided specific transfer rules for two categories of assets: the purchase of an annuity and the purchase of a promissory note, loan, or mortgage. For annuities, 42 USC 1396p(c)(1)(F) provides that "the purchase of an annuity shall be treated as the disposal of an asset for less than fair market value"—that is, a penalized transfer— "unless . . . (i) the State is named as the remainder beneficiary in the first position for at

8

least the total amount of medical assistance paid on behalf of the institutionalized individual under this subchapter; or (ii) the State is named as such a beneficiary in the second position after the community spouse or minor or disabled child and is named in the first position if such spouse or a representative of such child disposes of any such remainder for less than fair market value." This provision ensures that if a community-spouse annuitant does not survive the annuity's term, the state agency, rather than a third-party beneficiary or heir (other than a minor or disabled child), will be paid the remaining annuity payments up to the total amount of Medicaid assistance paid on behalf of the institutionalized spouse. [7] See *Hutcherson v Arizona Health Care Cost Containment Sys Admin*, 667 F3d 1066, 1070 (CA 9, 2012) ("We will give the plain meaning to the unambiguous language in § 1396p(c)(1)(F)(i), which allows states to reach a deceased community spouse's annuity for costs incurred on behalf of an institutionalized spouse.").

Additionally, 42 USC 1396p(c)(1)(G) provides that an annuity "purchased by or on behalf of an annuitant who has applied for medical assistance with respect to nursing facility services" will be treated as an "asset" unless the annuity is purchased with proceeds from certain retirement accounts or the annuity contract is irrevocable and nonassignable,

---

[7] Likewise, Congress has required a state payback provision to be included in any trust that is exempt from the general trust rules. See 42 USC 1396p(d)(4). Thus, while certain transfers of assets into exempt trusts are permitted penalty-free, see 42 USC 1396p(c)(2)(B)(iii) and (iv), those assets are still subject to a Medicaid payback. The only nonpenalized transfer of assets not subject to Medicaid payback, other than transfers "for the sole benefit of" the community spouse, are transfers directly to a blind or disabled child and the transfer of a home under specific conditions. See 42 USC 1396p(c)(2)(B)(iii) (incorporating the description of a blind or disabled child in 42 USC 1396p(c)(2)(A)(ii)(II)); 42 USC 1396p(c)(2)(A).

the contract is actuarially sound, and the payments are equal during the term of the annuity. The Department has interpreted these latter requirements (irrevocable and nonassignable, actuarially sound, and providing for equal monthly payments) as applying to all annuities purchased with countable resources; otherwise, the transfer is subject to penalty. See Michigan Department of Health and Human Services, *Bridges Eligibility Manual 401* (July 2014), p 5.[8] The purchase of a community-spouse annuity that satisfies the requirements of 42 USC 1396p(c)(1)(F) and (G)—a "qualified" community-spouse annuity—will not trigger a divestment penalty, because the transfer is for "the sole benefit of" the community spouse. 42 USC 1396p(c)(2)(B)(i) and (ii).

For the purchase of a debt obligation, 42 USC 1396p(c)(1)(I) provides, for purposes of the transfer rules, that "the term 'assets' includes funds used to purchase a promissory note, loan, or mortgage," unless the debt instrument: (i) has an actuarially sound repayment term, (ii) is payable in equal installments, and (iii) does not allow for cancellation of the balance upon the death of the lender. 42 USC 1396p(c)(1)(I)(i) through (iii). In plainer terms, if the debt instrument does not satisfy these requirements, the transferred assets (the assets used to purchase the note, loan, or mortgage) will be subject to a divestment penalty.

While there is considerably less caselaw addressing 42 USC 1396p(c)(1)(I) than that addressing annuities, when such transfers are challenged, courts have considered whether the transaction is bona fide or an attempt to circumvent the Medicaid eligibility and transfer rules. See *Landy v Velez*, 958 F Supp 2d 545, 554 (D NJ, 2013) ("To be bona fide, an

---

[8] The Medicaid Act also requires an applicant to disclose in her application any interest she or her spouse has in an annuity, regardless of whether the annuity is countable as a resource. See 42 USC 1396p(e).

informal cash loan must (1) be enforceable under state law, (2) be in effect at the time of the transaction, (3) contain an acknowledgement of an obligation to repay and (4) have a plan for repayment (5) which is feasible in light of 'the amount of the loan, the [borrower]'s resources and income, and the [borrower]'s living expenses.' "), quoting Social Security Administration, *Program Operations Manual System*, SI 01120.220(D)(1) through (5).

These annuity and debt obligation rules were added by the Deficit Reduction Act of 2005, PL 109-171; 120 Stat 4 (the DRA). In enacting the DRA, Congress "sought to further close loopholes in the Medicaid Act." *Hutcherson*, 667 F3d at 1069. The DRA achieved this by "restrict[ing] the use of annuities by Medicaid applicants in order to prevent applicants from sheltering their assets in anticipation of Medicaid eligibility." *Carlini v Velez*, 947 F Supp 2d 482, 486 (D NJ, 2013); see also *Morris v Oklahoma Dep't of Human Servs*, 685 F3d 925, 935-938 (CA 10, 2012) (explaining how the conversion of spousal resources into a stream of future payments for the community spouse exploits the Act's separate treatment of income postinstitutionalization). Such restrictions further Congress's interest in "preventing financially secure couples from obtaining Medicaid assistance." *Blumer*, 534 US at 480.

All these restrictions make little sense, however, if 42 USC 1396p(c) and (d) allow married couples to immediately transfer unlimited assets to a community spouse, without incurring any divestment penalty, simply by placing assets into an SBO trust.

## C. MEDICAID'S TRUST RULES

Section 1396p(d) provides a "comprehensive system of asset-counting rules for determining who qualifies for Medicaid." *Lewis v Alexander*, 685 F3d 325, 332 (CA 3,

11

2012). Enacted by the Omnibus Budget Reconciliation Act (OBRA) of 1993, PL 103-66; 107 Stat 312, see Part III(A) of the majority opinion, the current trust rules responded to "Medicaid's original asset-counting rules, [under which] individuals could put large sums of money in trust, thereby vesting legal title to those assets in the trust and reducing (on paper) the amount of assets owned by the individual." *Lewis*, 658 F3d at 332. "In the 1993 OBRA amendments, Congress established a general rule that trusts would be counted as assets for the purpose of determining Medicaid eligibility." *Id*. at 333.

The majority has explained well the general rules for revocable and irrevocable trusts. But one feature bears emphasis: Congress has specifically exempted three types of trusts from those general trust rules. See 42 USC 1396p(d)(4)(A) through (C).[9] Two of these "(d)(4) trusts"—special-needs trusts and pooled trusts (42 USC 1396p(d)(4)(A) and (C))—allow a *disabled* beneficiary to receive assets without disqualifying the beneficiary for Medicaid assistance. The third, a qualified-income trust (42 USC 1396p(d)(4)(B)), allows individuals in certain states to control the amount of income used to determine Medicaid eligibility. All of these trusts serve very different purposes than SBO trusts. But just as with the rules for annuities, the rules for these exempted (d)(4) trusts require that, upon the death of the trust beneficiary (or beneficiaries), any remaining trust assets must be used to pay back the state agency up to the amount of Medicaid financial assistance expended on behalf of the trust beneficiary or beneficiaries. See 42 USC 1396p(d)(4)(A), (B)(ii), and (C)(iv).

---

[9] And certain transfers into these (d)(4) trusts are exempt from the divestment penalty. See 42 USC 1396p(c)(2)(B)(iii) and (iv).

The plaintiffs' Medicaid planning strategy—SBO trusts—implicates the general rules for irrevocable trusts at 42 USC 1396p(d)(3)(B). As the majority explains, any property held in an SBO trust is not an available "resource" of the married couple for purposes of Medicaid's financial eligibility determination, because the trust is irrevocable and legal title is held by the third-party trustee; the trust property is therefore not countable, because it "is not held by either spouse." And because the terms of these SBO trusts require that any distribution be made to the plaintiffs' spouses (the community spouses) for the spouses' lifetimes, there can never be "any circumstances under which payment from the [SBO] trust could be made to or for the benefit of" these plaintiffs. 42 USC 1396p(d)(3)(B)(i).

Normally, such a transfer would trigger the divestment penalty, as the property held in trust is "assets disposed by the [institutionalized] individual for purposes of" the transfer rules. 42 USC 1396p(d)(3)(B)(ii). But according to the plaintiffs, the transfer of marital assets into these SBO trusts are exempt from the divestment penalty, because they are transfers to a third party (the trusts) "for the sole benefit of" the community spouse. See 42 USC 1396p(c)(2)(B)(i) and (ii). In short, the plaintiffs' theory is that an institutionalized individual can achieve immediate (penalty-free) eligibility for Medicaid financial assistance by simply placing any assets over the eligibility limit in an irrevocable trust, and also avoid the divestment penalty that accompanies that kind of divestment, so long as any payments from the trust are made only to the community spouse during his lifetime.

The result: a perfect loophole to Congress's carefully constructed eligibility and transfer rules.

## D. THE STATUTORY TEXT: "FOR THE SOLE BENEFIT OF"

I agree with the majority that "the individual" in 42 USC 1396p(d)(3)(B) refers to the Medicaid applicant.[10]  But I doubt the plaintiffs' interpretive victory will ultimately prove to be an effective Medicaid planning strategy.  The strategy only works if the plaintiffs can avoid a divestment penalty.  The plaintiffs believe they can do so because their transfers of assets into the SBO trusts were "for the sole benefit of" the community spouses.  42 USC 1396p(c)(2)(B).  The lower courts were never presented with this question because the Department had no reason to impose a penalty, given its conclusion that these plaintiffs did not satisfy the Act's eligibility criteria.  The majority opinion sensibly declines to address the penalty issue.  Because I see a significant hurdle for plaintiffs whenever this question is addressed, I write separately to explain.

---

[10] The plaintiffs emphasize that Congress did include "the individual's spouse" within what the majority describes as the "any-circumstances rule" of 42 USC 1396p(d)(3)(B), as Congress did with the comparable Supplemental Security Income (SSI) provision.  While my analysis differs from that of the Court of Appeals, I agree with the panel that Congress intended for spousal resources to be evaluated jointly and that the interpretation urged by the plaintiffs runs counter to that intent, especially given the spousal-impoverishment provisions.  The majority concludes that this was not a mere oversight because of Congress's inclusion of "the individual's spouse" in the rules governing the SSI program.  Maybe.  But I'm not as convinced as the majority that the omission was intentional.  As the majority observes, "the Medicaid trust rules in 42 USC 1396p(d) were added by OBRA 93, six years before Congress added the SSI trust rules in 42 USC 1382b(e) . . . ."  In other words, when Congress enacted 42 USC 1396p(d)(3)(B), it was writing on a clean slate— there was no comparable SSI statute.  And Congress has not amended 42 USC 1396p(d)(3)(B) at any time since.  But even if Congress intended for the SSI rules to operate differently, or if instead Congress was putting a finer point on what it thought to be the existing Medicaid rule (and should have also amended that rule), I nevertheless agree with the majority that the Act's reference to "the individual" in 42 USC 1396p(d)(3)(B) unambiguously refers to the Medicaid applicant.

14

Congress has not defined "for the benefit of [the institutionalized spouse]" in the trust rules. 42 USC 1396p(d)(3). Likewise, Congress has not defined "for the sole benefit of [the community spouse]" in the transfer rules. 42 USC 1396p(c)(2)(B). If words are not defined by statute, we give them their ordinary meaning. The definitions of "sole" and "benefit" are uncontroversial. For example, *Merriam-Webster's Collegiate Dictionary* (11th ed) defines the term "benefit" as "something that promotes well-being" and "useful aid." "Sole" is defined as "having no sharer" and "being the only one." *Id*. Other dictionaries agree. And the statutory text gives us another clue: a payment "for the benefit of" an individual must mean something different than a payment "to" an individual, given Congress's use of both connected by "or" in 42 USC 1396p(d)(3)(B) ("to *or* for the benefit of the [institutionalized] individual") and 42 USC 1396p(c)(2)(B)(i) ("to the individual's spouse *or* to another for the sole benefit of the individual's spouse") (emphasis added).

So is a transfer of assets to a third-party trustee "for the sole benefit of" the community spouse if that transfer "benefits" the institutionalized spouse by allowing her to satisfy Medicaid's eligibility limits while avoiding the specific rules that apply to community-spouse annuities? And if the community spouse receives a payment from an SBO trust and then shares that payment with the institutionalized spouse, is that a circumstance in which "payment from the trust" is "made . . . for the benefit of" the institutionalized spouse?[11]

---

[11] So thought the United States Court of Appeals for the Third Circuit in *Johnson v Guhl*, 357 F3d 403, 408-409 (CA 3, 2004). *Johnson* concerned the use of so-called "community spouse annuity trusts" (CSATs) in the state of New Jersey. CSATs, like these SBO trusts, were irrevocable and "designed to provide a stream of annuity payments to the community spouse for the duration of his or her life." *Guhl*, 357 F3d at 406. If the trust named the

15

Even harder: what if an SBO trust names as a remainder beneficiary a person or entity other than the state agency?  That is, if a third party can receive the remainder, is the transfer "for the sole benefit of" the community spouse?

The simplest answer might be "yes"—there *are circumstances* under which a distribution from an SBO trust to a community spouse is "for the benefit of" the institutionalized spouse, and there *are persons* other than the community spouse who might "benefit" from a transfer of assets into an irrevocable SBO trust, if that transfer and trust make the institutionalized spouse eligible for benefits.  If that's right, then there are

---

state agency as the first remainder beneficiary, New Jersey would not consider the trust property as a countable asset.  *Id*.  The state changed its policy after the federal Department of Health and Human Services advised that such trusts should, in fact, be considered countable assets.  *Id*.  The plaintiffs challenged this interpretation.  The Third Circuit agreed with the state:

> As this is a question of statutory interpretation, we begin (and end) our inquiry with the relevant statute, 42 U.S.C. § 1396p(d)(3)(B).  That provision provides, in subsection (i), that "[i]n the case of an irrevocable trust—if there are any circumstances under which payment from the trust could be made to or for the benefit of [the institutionalized spouse whose assets are used to establish the trust], the portion of the corpus from which, or the income on the corpus from which, payment to the individual could be made shall be considered resources available to the individual. . . ."  Both parties agree that CSATs are irrevocable trusts.  They are generally funded with marital assets (assets that belong to both spouses).  Moreover, CSATs are designed so that the corpus and the income on the corpus will provide the community spouse a stream of payments.  Once the community spouse receives these payments, there is nothing preventing her or him from sharing them with the institutionalized spouse as well.  Section 1396p(d)(3)(B)(i) thus squarely covers CSATs—as "circumstances [exist] under which payment from the trust could be made to or for the benefit of" the institutionalized spouse—and deems them countable resources.  Accordingly, we affirm the District Court ruling that plaintiffs' CSAT assets are countable resources.  [*Guhl*, 357 F3d at 408-409 (alterations in original).]

16

circumstances under which a distribution from an SBO trust to a community spouse is "for the benefit of" the institutionalized spouse and the assets held in trust should be considered available resources or income for purposes of determining each plaintiffs' eligibility for Medicaid. And if there are persons other than the community spouse who might "benefit" from a transfer of assets into an irrevocable SBO trust, then the plaintiffs should be subject to a divestment penalty.

But that expansive interpretation—one that defines becoming eligible for Medicaid as a benefit—might prove too much. That understanding would prohibit Medicaid planning strategies that Congress has endorsed. After all, the purchase of a qualified community-spouse annuity "benefits" the institutionalized spouse if the conversion of resources to income allows the institutionalized spouse to satisfy Medicaid's financial eligibility limits without incurring a divestment penalty. See *Morris*, 685 F3d at 935-938. And, of course, the transfer rules themselves permit certain transfers to (d)(4) trusts, which might also benefit the institutionalized spouse in the eligibility determination. See 42 USC 1396p(c)(2)(B)(iii) and (iv).[12]

But the statutory requirement that the transfer be "for the *sole* benefit of" the community spouse is still a hurdle that the plaintiffs must overcome if they are to receive immediate financial assistance. On this point, the statute's plain language, and federal guidance, are instructive.

---

[12] But here too, the transferred assets may be subject to a payback mechanism, because that is a condition of all the (d)(4) trust exceptions. See Part I(B) of this opinion.

There are no federal regulations interpreting 42 USC 1396p. The Centers for Medicare & Medicaid Services (CMS),[13] however, has provided guidance on the meaning of "for the sole benefit of" in the State Medicaid Manual, which includes an explanation of the transfer rules:

> For the Sole Benefit of.--A transfer is considered to be for the sole benefit of a spouse, blind or disabled child, or a disabled individual if the transfer is arranged in such a way *that no individual or entity except the spouse, blind or disabled child, or disabled individual can benefit from the assets transferred in any way, whether at the time of the transfer or at any time in the future.*

> Similarly, a trust is considered to be established for the sole benefit of a spouse, blind or disabled child, or disabled individual *if the trust benefits no one but that individual, whether at the time the trust is established or any time in the future*. However, the trust may provide for reasonable compensation, as defined by the State, for a trustee or trustees to manage the trust, as well as for reasonable costs associated with investing or otherwise managing the funds or property in the trust. In defining what is reasonable compensation, consider the amount of time and effort involved in managing a trust of the size involved, as well as the prevailing rate of compensation, if any, for managing a trust of similar size and complexity.

> *A transfer, transfer instrument, or trust that provides for funds or property to pass to a beneficiary who is not the spouse, blind or disabled child, or disabled individual is not considered to be established for the sole benefit of one of these individuals*. In order for a transfer or trust to be considered to be for the sole benefit of one of these individuals, the instrument or document must provide for the spending of the funds involved for the benefit of the individual on a basis that is actuarially sound based on the life expectancy of the individual involved. When the instrument or document does not so provide, any potential exemption from penalty or consideration for eligibility purposes is void.

> An exception to this requirement exists for trusts discussed in § 3259.7 [concerning the trust exemption found at 42 USC 1396p(d)(4) for

---

[13] At the federal level, the Medicaid program is administered by the Secretary of Health and Human Services, who in turn exercises his authority through CMS.

supplemental needs trusts and special-needs trusts]. *Under these exceptions, the trust instrument must provide that any funds remaining in the trust upon the death of the individual must go to the State, up to the amount of Medicaid benefits paid on the individual's behalf.* When these exceptions require that the trust be for the sole benefit of an individual, the restriction discussed in the previous paragraph does not apply when the trust instrument designates the State as the recipient of funds from the trust. Also, the trust may provide for disbursal of funds to other beneficiaries, provided the trust does not permit such disbursals until the State's claim is satisfied. Finally, "pooled" trusts may provide that the trust can retain a certain percentage of the funds in the trust account upon the death of the beneficiary. [CMS, *State Medicaid Manual*, § 3257(B)(6) (rev 64), p 3-3-109.2 (emphasis added).]

The manual provides the following guidance on the use of irrevocable trusts and the meaning of "to or for the benefit of":

C. Irrevocable Trust - Payments From All or Portion of Trust Cannot, Under Any Circumstances, Be Made to or for the Benefit of the Individual.-- When all or a portion of the corpus or income on the corpus of a trust cannot be paid to the individual, treat all or any such portion or income as a transfer of assets for less than fair market value . . . .

\* \* \*

D. Payments Made From Revocable Or Irrevocable Trusts to or on Behalf of Individual.--Payments are considered to be made to the individual when any amount from the trust, including an amount from the corpus or income produced by the corpus, is paid directly to the individual or to someone acting on his/her behalf, e.g., a guardian or legal representative.

*Payments made for the benefit of the individual are payments of any sort, including an amount from the corpus or income produced by the corpus, paid to another person or entity such that the individual derives some benefit from the payment.* For example, such payments could include purchase of clothing or other items, such as a radio or television, for the individual. Also, such payments could include payment for services the individual may require, or care, whether medical or personal, that the individual may need. Payments to maintain a home are also payments for the benefit of the individual.

\* \* \*

19

G.  Use of Trust vs. Transfer Rules for Assets Placed in Trust.--When a nonexcluded asset is placed in a trust, *a transfer of assets for less than fair market value generally takes place.*  An individual placing an asset in a trust generally gives up ownership of the asset to the trust.  If the individual does not receive fair compensation in return, you can impose a penalty under the transfer of assets provisions.  [CMS, *State Medicaid Manual*, § 3259.6 (rev 64), pp 3-3-109.28 through 3-3-109.30 (emphasis added).]

The manual does not address the specific interpretation of 42 USC 1396p(d)(3)(B) that the plaintiffs advance,[14] but it offers insight.  First, when evaluating whether there is "any circumstance under which payment from the trust could be made to or for the benefit of" the institutionalized spouse, the question is whether the payment is "paid to another person or entity such that the [institutionalized] individual derives some benefit from the payment."  CMS, *State Medicaid Manual*, § 3259.6(D), p 3-3-109.29.

The manual is entitled to respectful consideration because this interpretation is entirely consistent with the statutory text and the ordinary meaning of "sole" and "benefit." See *Skidmore v Swift & Co*, 323 US 134, 139-140; 65 S Ct 161; 89 L Ed 124 (1944) (explaining when an administrative policy is entitled to deference).  The question, then, is not whether the community spouse is free to share the payment with the institutionalized spouse, but whether the payment itself results in a direct benefit to the institutionalized spouse, such as a purchase of goods or services for the institutionalized spouse.  Cf. *Johnson*, 357 F3d at 408-409.

But there's more to do.  As the manual explains, "[w]hen a nonexcluded asset is placed in a trust, a transfer of assets for less than fair market value generally takes place." CMS, *State Medicaid Manual*, § 3259.6(G), p 3-3-109.30.  That is, the transfer is subject

---

[14] See generally CMS, *State Medicaid Manual*, § 3259, pp 3-3-109.24 through 3-3-109.38.

to a divestment penalty. This is because 42 USC 1396p(d)(3)(B)(ii) directs that for "any portion of the trust from which . . . no payment could under any circumstances be made to the [institutionalized] individual," that portion "shall be considered . . . to be assets disposed by the individual for purposes of" the transfer rules.

This point is critical. The plaintiffs believe that the transfer of assets into these SBO trusts is exempt from the divestment penalty because it was a transfer of assets "for the sole benefit of" the plaintiffs' spouses. I am not convinced.

As the manual explains, "[a] transfer, transfer instrument, or trust that provides for funds or property to pass to a beneficiary who is not the spouse . . . is not considered to be established for the sole benefit of [the spouse]." CMS, *State Medicaid Manual*, § 3257(B)(6), p 3-3-109.2. And the relevant period for determining whether the "funds or property . . . pass to a beneficiary who is not the spouse" extends to "any time in the future." *Id*. If there is any person (other than the community spouse) who might stand to benefit from the transfer of assets into an SBO trust, the transfer results in a penalty. This fits with the dictionary definitions, too—if there is another person who might benefit from the transfer, the transfer is not for the "sole" benefit of the community spouse.

In these cases, the plaintiffs' SBO trusts generally reserved in the community spouse a testamentary power of appointment.[15] That is, if any plaintiff's spouse died before all

---

[15] The Lollar Trust, for example, provided the community spouse with a special testamentary power of appointment for any balance held in trust. See Lollar Trust, Section 3.2. The Hegadorn Trust directed that, if the community spouse predeceased plaintiff Hegadorn, the "Trustee shall distribute the remaining trust property to the trustee of the *SPECIAL SUPPLEMENTAL CARE TRUST FOR MARY ANN HEGADORN*"; otherwise, any balance would be administered under the terms in the community spouse's will. Hegadorn Trust, Sections 3.2-3.4. The Ford Trust provided the community spouse with a

21

property held in trust could be distributed to him, the remainder would be distributed according to the spouse's will. Thus, when the plaintiffs transferred their assets into these SBO trusts, there was the potential that, at some point in the future, a person other than the community spouses (the yet-to-be-determined remainder beneficiaries) might benefit from the transfer. Therefore, despite their name, these "solely for the benefit of" trusts were not for the sole benefit of the community spouse.[16]

What's more, the plaintiffs' interpretation of the Act makes little sense given the annuity rules and the (d)(4) trusts. Like these SBO trusts, an annuity presents the potential of a remainder beneficiary if the community spouse dies before the annuity's term. But Congress has written specific affirmative rules permitting the use of community-spouse annuities as a valid Medicaid planning strategy—so long as the annuity is actuarially sound

---

special testamentary power of appointment limited to his heirs; if that power was not fully exercised, the trustee was directed to "divide the remaining Trust property . . . into separate trusts, equal in value, one for each living Child and one for then living Descendants, collectively, of each deceased Child." Ford Trust, Section 3.2.

The payment terms of the trusts are less clear; while all the trusts require the trustee to make distributions on an "actuarially sound" basis, the trustee is not prohibited from distributing all of the trust property nearly immediately, in a lump-sum payment, contrary to the requirements placed on annuities. See Lollar Trust, Section 2.2; Hegadorn Trust, Section 2.2; Ford Trust, Section 2.2.

[16] The possibility of a remainder beneficiary is always present in a trust, either as provided for in the trust instrument or by operation of law. If the plaintiffs' SBO trusts did not include a residuary clause, any property held in an SBO trust would revert to the settlor (or the settlor's heirs) upon the death of the community spouse. MCL 555.18. Perhaps, then, the transfer of assets into an SBO trust should *always* result in the imposition of a divestment penalty.

and the state agency is named as a remainder beneficiary.[17] And the remainder-beneficiary rule for annuities shows that Congress did not intend to create an easy alternative with all the advantages and none of the disadvantages. See, e.g., *Breighner v Mich High Sch Athletic Ass'n, Inc*, 471 Mich 217, 232; 683 NW2d 639 (2004) ("[A] statutory term cannot be viewed in isolation, but must be construed in accordance with the surrounding text and the statutory scheme."). Likewise, where Congress has permitted transfers to certain (d)(4) trusts free from penalty, see 42 USC 1396p(c)(2)(B)(iii) and (iv), Congress has explicitly required a payback mechanism in the recipient trust. See note 7 of this opinion.

## E. THE MEDICAID ACT AS A WHOLE

As the Supreme Court explained in *Blumer*, "[e]ach participating State develops a plan containing reasonable standards for determining eligibility for and the extent of medical assistance within boundaries set by the Medicaid statute and the Secretary of Health and Human Services." *Blumer*, 534 US at 479 (cleaned up). And those standards must "comply with the provisions of [42 USC 1396p] . . . ." 42 USC 1396a(a)(18). If the plaintiffs' interpretation of the Act is correct, SBO trusts would be available as a Medicaid planning strategy in every state that has elected to cover the medically needy. Yet no other jurisdiction has endorsed the legality of this type of Medicaid planning. Rather, the only

---

[17] The only circumstance in which a third party might stand to "benefit" from a qualified community-spouse annuity is if that party is named as a second (or later) remainder beneficiary and the state agency is fully paid back for all financial assistance provided to the institutionalized spouse. But the annuity must also be irrevocable, actuarially sound, and paid out in substantially equal monthly payments; otherwise, the transfer will be penalized. See Part I(B) of this opinion. A community-spouse annuity is thus an unreliable strategy for passing wealth to others, to say the least, as it requires the premature death of the community spouse.

23

appellate court to have even considered such a theory rejected it, albeit on other grounds. *Johnson*, 357 F3d at 408-409.

If the plaintiffs were successful in avoiding the divestment penalty, their planning strategy would make meaningless the complex set of rules governing Medicaid eligibility. Consider, for example, an irrevocable trust that is funded with marital assets after the look-back date. The hypothetical trust provides that the third-party trustee must not make any distribution to the community spouse until after the Department has made a determination on the institutionalized spouse's eligibility (which must be made within 45 days from the date of application, see 42 CFR 435.912). The hypothetical trust further provides that, once an eligibility determination has been made, the trustee must immediately distribute all property to the community spouse. See 42 USC 1396p(d)(2)(C)(ii) and (iii) (providing that the trust rules "shall apply without regard to . . . whether the trustees have or exercise any discretion under the trust [or] any restrictions on when or whether distributions may be made from the trust . . . ."). Such a trust would serve as a vehicle through which assets could be placed during the application, and then passed directly to the community spouse once an eligibility determination is made.

The plaintiffs argue that this transfer would not trigger a divestment penalty, because it would be for "for the sole benefit of" the community spouse. And there is no dispute that the distribution of assets to the community spouse would not be imputed to the institutionalized spouse; that part is settled. See 42 USC 1396r-5(b)(2) and (c)(4); *Blumer*, 534 US at 480-481. Thus, the value of the assets placed in the trust would be sheltered from the initial resource evaluation, and the distribution would not affect the institutionalized spouse's continued eligibility, nor would it change the level of financial

assistance provided by the Department. The only practical restriction is that the trust property would be inaccessible to the community spouse for the period it would take the Department to process the application. Aside from that minor inconvenience, a married applicant can evade virtually every restriction that Congress has placed on Medicaid financial assistance. There would be no limitation on the amount of assets that a Medicaid applicant could transfer penalty-free to her spouse, virtually immediately, not subject to the repayment requirements for (d)(4) trusts and trust-like devices such as annuities, and shielded from Medicaid's initial resource assessment. That result is inconsistent with the statute, especially given that Congress has already enacted complex rules that "shelter[] from diminution a standard amount of assets" (the CSRA). *Blumer*, 534 US at 478; see also *Breighner*, 471 Mich at 232. But our determination requires us to consider the entire text, not isolated parts lifted out of context. See Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 167 ("Perhaps no interpretative fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.").

## II. CONCLUSION

In the Medicaid Act, Congress has balanced two competing policies: "protect[ing] community spouses from 'pauperization' while preventing financially secure couples from obtaining Medicaid assistance." *Blumer*, 534 US at 480. These policies are well reflected in the (admittedly complex) statutory scheme. I agree with the majority that "the individual" in 42 USC 1396p(d)(3)(B) refers to the Medicaid applicant. But if the

25

plaintiffs' transfers trigger the divestment penalty, it is not likely they will view this planning strategy as a success. The majority is correct to leave this question for a case in which it has been presented by the parties. I address it here only to caution individuals who might consider forming *irrevocable* trusts in an effort to achieve Medicaid eligibility, especially when other planning strategies are available, permission for which is well settled.

Bridget M. McCormack

CAVANAGH, J., did not participate in the disposition of this case because the Court considered it before she assumed office.

26